[Civ. No. 38965. First Dist., Div. One. Mar. 17, 1977.]

FRASER-YAMOR AGENCY, INC.,
Plaintiff, Cross-defendant and Respondent, v.
COUNTY OF DEL NORTE, Defendant,
Cross-complainant and Appellant;
HUGH DELL, as Auditor, etc., Intervener and Appellant.

## COUNSEL

Robert W. Weir, District Attorney, for Defendant, Cross-complainant and Appellant.

Mario E. de Solenni for Intervener and Appellant.

Hanson, Bridgett & Marcus, Huber, Goodwin, Murray, Cissna, Prior & Carson and John J. Vlahos for Plaintiff, Cross-defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—In this declaratory relief action plaintiff corporation (hereinafter "the corporation") sought a declaration that all currently outstanding insurance contracts where defendant county (hereinafter "the county") is the insured party entered into or procured by the corporation and its predecessor partnership (hereinafter referred to collectively as "the agency") are valid and in full force and effect. The corporation alleges that a controversy has arisen with respect to the validity of such insurance contracts because at the time said insurance contracts were entered into John Fraser, a shareholder of the corporation and a partner in its predecessor was a member of the board of supervisors of the county.

The county, by way of cross-complaint, and its auditor by way of a complaint in intervention, sought a declaration that all such insurance contracts, whether current or expired, issued since 1970 be declared void. The county, in addition, prayed for judgment for a refund of all premiums paid to the agency, together with interest and damages for the use of premiums.

After issue was joined on the respective pleadings the corporation filed a motion for summary judgment and the auditor countered with a motion for summary judgment, for judgment on the pleadings and

objection to the introduction of evidence. The county joined in the auditor's motion.

After a hearing on the respective motions the trial court, on the same day, made three separate orders each of which was entered in the judgment book. The first order is entitled "Order Denying Intervenor's Motion for Summary Judgment, For Judgment on the Pleadings and Objection to Introduction of Evidence." This order directed that the auditor's motion be denied.

The second order is entitled "Order Granting Summary Judgment and Summary Judgment For Plaintiff." This order directed that the corporation's motion for summary judgment be granted and ordered that the county's answer be stricken and that judgment for the corporation be entered that "All currently outstanding insurance contracts with the County of Del Norte as the insured party entered into or procured by Plaintiff or its predecessor are valid and in full force and effect."

The third order is entitled "Order Striking Cross-Complaint and Final Judgment." This order directs that the corporation's motion for summary judgment be granted, that the county's cross-complaint be stricken, and that judgment for the corporation be entered that "All currently outstanding insurance contracts with the County of Del Norte as the insured party entered into or procured by Plaintiff and Cross-defendant or its predecessor are valid and in full force and effect."

The county appeals from "the Order Denying Intervenor's Motion For Summary Judgment For Judgment on the Pleadings and Objection to Introduction of Evidence; Order Granting Summary Judgment and Summary Judgment For Plaintiff; and Order Striking Cross-Complaint and Final Judgment." The auditor's notice of appeal is identical except as to the last phrase which reads: "and Order Striking Cross-Complaint and Complaint in Intervention and Final Judgment."

With respect to the notices of appeal, we observe initially that the first order made by the court refers only to the auditor's motion and not to the county's motion. As already pointed out, the county joined in the auditor's motion. The parties have assumed that implicit in the court's order is also an order denying the county's motion in view of the joinder and we shall so treat it.

We observe, too, that the notices of appeal include appeals from nonappealable orders. The order denying the motion of the county and the auditor for summary judgment is nonappealable (*Nevada Constructors* v. *Mariposa etc. Dist.*, 114 Cal.App.2d 816, 817 [251 P.2d 53]) as is the order denying their motion for judgment on the pleadings. (*Stevens* v. *Key Resistor Corp.*, 186 Cal.App.2d 325, 326 [8 Cal.Rptr. 908].) ■ Insofar as the appeal purports to be from the order denying the objection of the county and the auditor to the introduction of evidence, no appeal lies from such an order as it is not among those interlocutory orders which section 904.1 of the Code of Civil Procedure makes appealable. (See *Dabney* v. *Wilhelm*, 190 Cal. 340, 341 [212 P. 203], holding an order sustaining an objection to the taking of any testimony to be nonappealable.) Moreover, the purpose of an objection to the introduction of any evidence is identical with that of a motion for judgment on the pleadings because "the objecting party seeks to end the trial and obtain a favorable judgment, on the pleadings, without any evidence." (4 Witkin, Cal. Procedure (2d ed.) pp. 2823-2824; see *Miller* v. *McLaglen*, 82 Cal.App.2d 219, 223 [186 P.2d 48].)

■ The order granting the motion for summary judgment is a nonappealable preliminary order (*Saunders* v. *New Capital For Small Businesses, Inc.*, 231 Cal.App.2d 324, 326 [41 Cal.Rptr. 703]), and an appeal does not lie from the order striking the cross-complaint where, as here, the parties to the complaint and cross-complaint are identical. (*Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 118 [199 P.2d 668]; *Smith* v. *Smith*, 209 Cal.App.2d 343, 344 [25 Cal.Rptr. 837].)

Adverting to the appeals from the "summary judgment" and the "final judgment" we observe that both of these judgments were entered on the same date. While both grant judgment to the corporation in almost identical language, the "summary judgment" fails to dispose of the county's cross-complaint or the auditor's complaint in intervention. Therefore, this judgment is not final and an appeal does not lie from it. (See *Carlson, Collins, Gordon & Bold* v. *Banducci*, 257 Cal.App.2d 212, 219, fn. 1 [64 Cal.Rptr. 915]; *Tsarnas* v. *Bailey*, 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629].) ■ The "final judgment," however, additionally orders that the county's cross-complaint be stricken and that it shall take nothing by its cross-complaint. This judgment disposes of the cross-complaint but it fails to mention or explicitly dispose of the auditor's complaint in intervention. The complaint in intervention, like the county's cross-complaint, seeks a declaration that the insurance contracts are void.

Accordingly, the "final judgment" is not final because of its failure to dispose of the complaint in intervention. We do not deem it advisable, however, to dismiss the appeal on that basis because it is apparent from the orders of the trial court that it determined that the auditor was not to take anything by his complaint in intervention. The parties have not made a point of the omission to dispose of the complaint in intervention but have presented the issues on appeal under the assumption that the auditor was denied any relief on his complaint in intervention. Accordingly, in the interests of justice and to prevent unnecessary delay we order, under the authority of *Gombos* v. *Ashe*, 158 Cal.App.2d 517, 524-525 [322 P.2d 933], *Tsarnas* v. *Bailey, supra,* 179 Cal.App.2d 332, 337, *Shepardson* v. *McLellan,* 59 Cal.2d 83, 89 [27 Cal.Rptr. 884, 378 P.2d 108], and *Coronet Credit Corp.* v. *West Thrift Co.,* 244 Cal.App.2d 631, 634, fn. 2 [53 Cal.Rptr. 433], that the "final judgment" be amended by including therein an order that the auditor is entitled to no relief on his complaint in intervention.

The "final judgment" as amended is an appealable judgment. The remaining orders appealed from being nonappealable, the appeal therefrom must be dismissed.

 The issue presented on the appeal from the "final judgment" is whether Fraser, at all times pertinent, had a financial interest in the contracts of insurance in contravention of Government Code section 1090[1] which, in relevant part, provides: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ." Any contract or transaction entered into in violation of section 1090 is invalid. (§ 1092;[2] *Millbrae Assn. For Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 236 [69 Cal.Rptr. 251]; *People* ex rel. *Mosk* v. *Barenfeld,* 203 Cal.App.2d 166, 172 [21 Cal.Rptr. 501]; *Terry* v. *Bender,* 143 Cal.App.2d 198, 206 [300 P.2d 119].)

The essential facts are not in dispute. The corporation and its predecessors have supplied all of the county's insurance since 1945. In 1956 Fraser became a partner in the corporation's predecessor partner-

---

[1]Unless otherwise indicated all statutory references hereinafter made are to the Government Code.

[2]Section 1092, in pertinent part, provides: "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. . . ." .

ship. On December 23, 1974, the partnership which was then composed of Fraser, George Yamor and Richard C. Jones was incorporated. Fraser owns 40 percent of the corporation.

Fraser and Yamor are insurance brokers and have been such since 1956 and 1959, respectively. Although the record is unclear with respect to the corporation, it appears to be conceded that it also is an insurance broker. It also appears from the record that the agency has acted as agent for the respective insurance companies providing for the insurance coverage under the subject contracts of insurance.[3]

The record discloses that the county called for bids for the placing of its insurance; that the agency placed bids for such insurance; that it was the successful bidder and procured the required insurance from insurance companies; that it collected premiums from the county and remitted them to the insurance companies; and that it serviced the insurance contracts.

The practice of the corporation with respect to premium payments received from the county is as follows: The premiums are deposited in a special account in the name of the corporation from which funds the appropriate premiums are paid to the insurance carrier involved. Accident and health insurance premiums are paid by the county directly to the insurance carrier which in turn remits a check for the commission to the corporation. The check for such commissions includes commissions from noncounty business. The check is thereafter deposited in the corporation's regular account and the portion of it applicable to county accident and health coverage is immediately written to the special account. Yamor, Jacobs and the corporation secretary, Mary Missell, are the only persons authorized to sign on the special account. Commissions

---

[3]Insurance Code section 1623 defines an "insurance broker" as ". . . a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer." (See also Ins. Code, § 33.)

"An insurance agent is a person authorized by and on behalf of an insurer to transact insurance. . . ." (Ins. Code, § 1621.)

The term "transact" is defined in Insurance Code section 35 as follows: " 'Transact' as applied to insurance includes any of the following: (a) Solicitation. (b) Negotiations preliminary to execution. (c) Execution of a contract of insurance. (d) Transaction of matters subsequent to execution of the contract and arising out of it."

Insurance Code section 1627, in pertinent part, provides: ". . . In case of a license to act as a . . . insurance agent, or insurance broker issued to an organization, the organization is the holder thereof, but the natural person or persons named thereon are thereby permitted to exercise the agency or brokerage powers of the organization . . . ."

Insurance Code section 1628, in pertinent part, defines an "organization" as ". . . a copartnership, association or corporation. . . . ."

retained in the special account are paid periodically to Yamor and Jacobs according to their respective interests in the corporation. Although no portion of county insurance commissions are used to pay any part of the overhead or expenses of the agency, the noncounty business of the corporation assumes the entire office overhead, including the cost of servicing the county's insurance business.

Fraser has an unlimited expense account with the corporation. He receives a full salary from the corporation but spends about three-quarters of his time in the corporation's business. He is provided a Jaguar automobile by the corporation which is "possibly" more expensive to own and operate than those automobiles provided by the corporation for the use of Yamor and Jacobs.

Fraser is now and has been since June 2, 1970, a member of the board of supervisors of the county. Prior to assuming his position as supervisor, Fraser and the corporation's predecessor partnership secured the opinions of their respective counsel concerning a possible conflict of interest under section 1090. Acting upon this advice, Fraser issued a formal statement to the board of supervisors disclosing his past and present interest in said partnership. He announced that he would take no part whatsoever in discussions of, or actions by the board relating to current or future contracts for county insurance, would take no part in handling the county's insurance account, that he had notified the appropriate department heads of the county of that fact, and that he had divested himself of all financial interests in the insurance contracts between the county and various insurers.

On October 29, 1970, Fraser, Yamor and Jacobs entered into an amendment of their partnership agreement, effective June 22, 1970, providing that Fraser shall not participate, in any manner, in efforts to obtain, service or continue any insurance business with the county; that Fraser shall not participate, directly or indirectly, in any profits or losses arising out of business with the county; and that profits or losses derived from any business with the county shall be shared by Yamor and Jacobs. The agreement by its terms is effective until termination of Fraser's position as a supervisor of the county.

Portions of the premiums from the county insurance business were retained as commissions by Yamor and Jacobs individually but no portion of the premiums were retained by the partnership itself as a commission for obtaining and servicing the county policies. No portion

of the county insurance premiums was utilized for the business expenses of the partnership. The entire office overhead was assumed and borne by the remainder of the partnership's business. The conversion of the partnership to a corporate form has not altered this treatment of premiums and commissions from the county insurance business.

At no time during his tenure on the board of supervisors has Fraser directly or indirectly participated in any manner in the procurement, solicitation, or servicing of county insurance. Nor has he directly or indirectly sought to influence other members of the board with respect to the insurance.

The corporation contends that Fraser has successfully divested himself of any financial interest in the contracts of insurance procured for the county by the agency and asserts that even if it should be determined that there is no such divestiture Fraser must be deemed not to be financially interested in the contracts because he has a remote interest therein within the meaning of section 1091.[4]

Adverting to the provisions of section 1090 we observe that one of the elements to be considered in determining whether there has been a violation of the statute is participation by the employee or officer in the making of the contract. An employee or officer making such a contract as an individual must participate in the making of the contract in his official capacity. (See *Stigall* v. *City of Taft,* 58 Cal.2d 565, 568, 571 [25 Cal.Rptr. 441, 375 P.2d 289]; *Millbrae Assn. For Residential Survival* v. *City of Millbrae, supra,* 262 Cal.App.2d 222, 236-237.) On the other hand, where the contract is entered into by the body or board of which the employee or officer is a member, the element of participation is present by the mere fact of such membership irrespective of whether the employee or officer personally abstains from engaging in any of the embodiments resulting in the making of the contract.[5] This interpretation is evident

---

[4]Section 1091, in part, provides: "(a) An officer shall not be deemed to be interested in a contract entered into by a body or board of which he is a member within the meaning of this article if he has only a remote interest in the contract and if the fact of such interest is disclosed to the body or board of which he is a member and noted in its official records, and thereafter the body or board authorizes, approves, or ratifies the contract in good faith by a vote of its membership sufficient for the purpose without counting the vote or votes of the officer or member with the remote interest. . . ." (The specifications and meaning of "remote interest" are thereinafter set forth.)

[5]Such embodiments include preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and solicitation for bids. (*Stigall* v. *City of Taft, supra,* 58 Cal.2d 565, 569, 571.)

from the language of the statute which, in pertinent part, provides that an officer or employee "shall not be financially interested in any contract made by them in their official capacity, *or by any body or board of which they are members. . . .*" (Italics added.)

Accordingly, we conclude that Fraser participated in the making of subject contracts by virtue of his membership on the board of supervisors which made such contracts, notwithstanding any abstention on his part from any of the embodiments that were encompassed in the making of the contracts.

■ The crucial question in the present case is whether Fraser was "financially interested" in the subject contracts. The meaning of that term has not been interpreted by the courts of this state. It is significant to note that the word "financially" was added to section 1090 in 1963 (Stats. 1963, ch. 2172, § 1) and that cases construing section 1090 as it read prior to that time were concerned with the meaning of the word "interest." (See *Stigall* v. *City of Taft, supra,* 58 Cal.2d 565, 568-569; *People* v. *Darby,* 114 Cal.App.2d 412, 426 [250 P.2d 743] [app. dism. 345 U.S. 937 (97 L.Ed. 1364, 73 S.Ct. 833)].) In *Darby* it was observed that to have an "interest" in a contract the officer was not required to share directly in the profits to be realized but that he has an interest the moment he places himself in a situation where his personal interest will conflict with the faithful performance of his duty as such an officer. (At p. 426.) In *Stigall* it was stated that the statute was concerned with "any interest" other than a remote or minimal interest which prevents the official involved from exercising absolute loyalty and undivided allegiance to the best interests of the government body. (At p. 569.)

Subsequent to the 1963 amendment the interest coming under the ban of section 1090 was no longer "any interest" but a "financial interest." The word "financial" is defined by Webster as "relating to finance or financiers." (Webster's Third New Internat. Dict.) The word "finance," in turn, is "the management or use of funds by a government, business, or individual" and as "the pecuniary affairs or resources of a state, company, or individual." (Webster's Third New Internat. Dict.)

■ Adverting to the instant case we apprehend that two distinct contracts are involved. One is a contract of agency whereby the agency, as an insurance broker, was employed to procure specific insurance for the county. (See Civ. Code, §§ 2299, 2307; Ins. Code, §§ 33, 1623; fn. 3, *supra; Frink* v. *Roe,* 70 Cal. 296, 307 [11 P. 820].) In such a contract the

broker transacts insurance on behalf of the county and not on behalf of the insurer. (Ins. Code, §§ 33, 1623.)

The other contract involved in the present case is the policy of insurance which was procured for the county by the agency. Such an insurance policy is a contract between the insurer (the insurance company) and the insured (the county) whereby for a premium paid by the insured the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event. (Ins. Code, §§ 22, 23; see *California Physicians' Service* v. *Garrison,* 28 Cal.2d 790, 803-804 [172 P.2d 4, 167 A.L.R. 306]; *Davis* v. *Phoenix Ins. Co.,* 111 Cal. 409, 415 [43 P. 1115]; *Gillies* v. *Michigan Millers etc. Ins. Co.,* 98 Cal.App.2d 743, 748 [221 P.2d 272].) As respects the insurance policy, the person authorized by and on behalf of the insurer to transact insurance is the agent of the insurer. (Ins. Code, § 1621, see fn. 3, *supra.*)

Although an insurance broker is ordinarily the agent of the insured and not of the insurer (*Arthur* v. *London Guar. & Acc. Co.,* 78 Cal.App.2d 198, 202 [177 P.2d 625]; *Detroit T. Co.* v. *Transcontinental Ins. Co.,* 105 Cal.App. 395, 398 [287 P. 535]), he may become the agent of the insurer as well as for the insured. (*Maloney* v. *Rhode Island Ins. Co.,* 115 Cal.App.2d 238, 244 [251 P.2d 1027].)

In the present case, in view of the manner in which the insurance business of the county was handled it appears that the agency acted both as the agent of the county (i.e., as an insurance broker) and as an agent of the respective insurance companies (i.e., as an insurance agent). Insofar as the agency's compensation is concerned that compensation came from the insurance company by way of commissions which the agency was authorized to deduct from the premiums paid by the county to the insurance companies.

The instant litigation does not involve the contracts between the county and the agency pursuant to which the agency, as an insurance broker, procured insurance coverage for the county. There was no attempt by the county or its auditor to declare the brokerage contracts illegal or void or to seek a return from the agency of the commissions paid to it by the insurance companies for the placement of the county's insurance. The court below was solely concerned with the validity of the insurance policies placed by the agency on behalf of the county and as to whether, upon a finding of invalidity, the county was entitled to a return of the premiums paid to the insurance companies for the insurance

coverage. That invalidity is predicated upon Fraser's interest in the agency which, in turn, acted as the agent for the insurance companies in the execution of the contracts providing for insurance coverage.

■ We apprehend that there are serious due process implications in presuming to adjudicate the validity of the insurance policies without affording the insurance companies their day in court. The insurance companies are not parties to the instant litigation which purports to adjudicate the validity of insurance policies in which they are contracting parties. "[P]ersons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the action" are indispensable parties. (*Bank of California* v. *Superior Court,* 16 Cal.2d 516, 521 [106 P.2d 879]; *Bowles* v. *Superior Court,* 44 Cal.2d 574, 583 [283 P.2d 704].) If such persons are not before the court, the court is without jurisdiction to adjudicate their rights because the failure to join an indispensable party constitutes a jurisdictional defect. (*Bank of California* v. *Superior Court, supra,* at pp. 522, 523; *Estate of Reed,* 259 Cal.App.2d 14, 22 [66 Cal.Rptr. 193]; see Code Civ. Proc., § 389.)

Because the requirement that indispensable parties be before the court is mandatory, it may be raised at any time and it may be raised by the appellate court on its own motion if the parties fail to make the objection. (*Bank of California* v. *Superior Court, supra,* 16 Cal.2d 516, 522; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 265 [73 P.2d 1163].) In the instant case no objection to the nonjoinder of the insurance companies was made in the court below nor has it been urged by the parties on this appeal. The indispensable party defect is raised by this court on its own motion.[6]

■ Accordingly, in the posture in which this case was presented, the only question that could be determined by the court below was whether Fraser was in conflict of interest on the basis that he had a financial interest in the contracts of insurance. It is undisputed that upon the execution of the contracts the agency had a financial interest in the contracts because it was entitled to a commission from the insurance companies out of the premiums paid by the county.

Although Fraser did not receive any part of these commissions he nevertheless continued to have a direct financial interest in the business

---

[6]It appears to us, too, that a declaration of invalidity would deprive the county of insurance coverage against present and future risks for liability arising during the period of insurance coverage afforded by the subject insurance contracts.

affairs of the agency and to be an active participant in the conduct of its business. We do not apprehend that Fraser divested himself of his financial interest in the agency merely because he did not share in the commissions derived by the agency from the county's insurance business or merely because none of these commissions were used to defray the operating expenses of the agency. Fraser has and has had an investment in the agency represented by his partnership and shareholder interests. His interest in the agency and in any contracts from which it derives a pecuniary benefit is clearly a financial one because the financial success of the agency inures to his personal benefit. Such success, in turn, enhances the value of Fraser's interest in the agency. The record discloses that the volume of business procured and placed by the agency is an important consideration in the agency's relationship with the insurance companies. If the volume of business produced by the agency is profitable the insurance companies pay an amount to the agency on a basis of profit-sharing over and above the ordinary commissions.

The conclusion we have reached is compelled, we believe, by the purpose and intendment of section 1090. The object of the Government Code provisions forbidding city officers from being financially interested in any contract made by them in their official capacity or by the body or board of which they are members is to insure absolute loyalty and undivided allegiance to the best interest of the municipality they serve and to remove all direct and indirect influence of an interested officer as well as to discourage deliberate dishonesty. (See *Stigall* v. *City of Taft, supra,* 58 Cal.2d 565, 569; *Hobbs, Wall & Co.* v. *Moran,* 109 Cal.App. 316, 319 [293 P. 145]; and see *Stockton P. & S. Co.* v. *Wheeler,* 68 Cal.App. 592, 601 [229 P. 1020].) In *Hobbs* it was observed that a councilman's membership on a city council may reasonably be expected to influence his associates. (109 Cal.App. at p. 319.)

It is contended by the corporation that, in any event, Fraser's interest is a remote interest under section 1091. Section 1091 provides that an officer shall not be deemed to be interested in a contract entered into by a body or board of which he is a member if he has only a remote interest in the contract and if the fact of such interest is disclosed to the body or board and the body or board authorizes, approves, or ratifies the contract in good faith by a vote of the membership sufficient for the purpose without counting the vote of the officer or member with the remote interest. In the instant case there was a disclosure of Fraser's interest in compliance with section 1091, the insurance contracts were authorized and approved by sufficient votes of the members of the

board, and Fraser abstained from such voting. The question for determination is whether Fraser's interest is a "remote interest."

The corporation contends that Fraser has and has had a "remote interest" in the subject insurance contracts within the meaning of that term as it is defined in section 1091. Reliance is placed on subdivisions (b)(2) and (b)(7) which provide as follows: "(b) As used in this article 'remote interest' means: . . . (2) That of an employee or agent of the contracting party, if such contracting party has 10 or more other employees and if the officer was an employee or agent of said contracting party for at least three years prior to his initially accepting his office. . . . (7) That of a supplier of goods or services when such goods or services had been supplied to the contracting party by the officer for at least five years prior to his election or appointment to office."

The county and its auditor contend that the agency is the "contracting party" and that therefore the provisions of section 1091 must be considered in the light of this fact. The corporation asserts that the parties to the insurance contracts are the county and the respective insurance companies and that therefore the "contracting party" is the insurance company and not the agency. We agree with the corporation's contention. It is conceded by the parties that the agency is not a party to the insurance contracts and that these contracts are entered into between the county and the insurance companies. The agency's role is that of an insurance broker acting as agent for the county in procuring insurance coverage and as agent of the insurance companies responding to the invitation to bid for the county's placement of insurance.

Adverting to subdivision (b)(2), we first observe that we are not concerned with that part of the statute stating that the contracting party must have "10 or more *other* employees." (Italics added.) Fraser is not and never has been an employee of any of the insurance companies involved. He was a partner in the predecessor partnership and was and is an employee of plaintiff corporation. As already noted, the question is not whether Fraser was an agent of plaintiff corporation but whether, at all times pertinent, he was an agent of the contracting party, i.e., the insurance company. During the time that he was a partner in the predecessor partnership he was clearly an agent of the subject insurance companies. When the partnership was incorporated Fraser became a shareholder and employee of the corporation. In this capacity he was, in essence, acting as an agent of the insurance companies whenever he

acted on behalf of the corporation in transacting insurance for the insurance companies.

Accordingly, the determining factor in the present case insofar as subdivision (b)(2) of section 1091 is concerned, is whether Fraser was an agent of the contracting insurance companies involved in this case "for at least three years prior to his initially accepting his office." The record clearly discloses that Fraser acted as an agent of the contracting insurance companies providing insurance coverage for the county for more than three years prior to his initially accepting office, but it does not show whether the insurance companies, who are contracting parties to the insurance contracts involved in this litigation, or any of them, were contracting parties for at least three years before Fraser accepted his office as supervisor. Moreover, the record does not disclose the identity of all the insurance companies who provided insurance coverage after Fraser assumed office and does not disclose at all the identity of such companies prior to his initially accepting office.

█ Directing our attention to subdivision (b)(7), we observe that it provides that an officer has a remote interest in a contract where the officer has been a supplier of goods or services to the contracting party and has supplied such goods or services for at least five years prior to his election or appointment to office. We apprehend that one who is an agent of an insurance company performing the duties undertaken by the agency in the present case is clearly supplying "services" to the insurance company. But here again there is a void in the evidentiary record as to whether such services were rendered to each insurance company involved for the five years preceding June 2, 1970, when Fraser became a supervisor.

█ An argument is also made by the corporation that subdivision (1)(a) of section 1091.5 is applicable. That subdivision provides: "(1) An officer or employee shall not be deemed to be interested in a contract if his interest is: [¶] (a) The ownership of less than 3 percent of the shares of a corporation for profit, provided the total annual income to him from dividends, including the value of stock dividends, from the corporation does not exceed 5 percent of his total annual income, and any other payments made to him by the corporation do not exceed 5 percent of his total annual income: . . ."

It is the corporation's contention that this subdivision has reference to each of the individual insurance companies involved in the present case.

We do not agree with this interpretation. Subdivision (1)(a) of section 1091.5 makes no reference to the "contracting party" as does section 1091 discussed above. Section 1091.5 refers, specifically, to the "interest" of the officer or employee in the contract, i.e., his financial interest therein, and directly relates to such interest when it is the financial interest in a contract of a corporation in which the officer or employee of the public entity is a shareholder. The corporation to which section 1091.5 applies in the present case is plaintiff corporation in which Fraser owns 40 percent of the outstanding shares. Such ownership and the evidence in the record disclosing that Fraser's total annual income from dividends exceeds the minimum percentages specified in subdivision (1)(a) of section 1091.5 renders this statute inapplicable.

■■ In summary, we conclude that as a matter of law Fraser has a financial interest in the subject insurance contracts. ■■■■ Whether this interest is a "remote interest" within the meaning of section 1091 is an issue that remains undetermined. Accordingly, the issue of financial interest in the contracts shall be deemed established and the action shall proceed as to the issues remaining.

The appeals from the order denying the motion of the auditor and the county for a summary judgment, for judgment on the pleadings, and the objections to the introduction of evidence are dismissed. The appeals from the order granting the corporation's motion for summary judgment and the summary judgment for the corporation are dismissed. The appeals from the order striking the county's cross-complaint are dismissed. The judgment designated "final judgment" is reversed with directions to the trial court to proceed with the action in accordance with the views herein expressed. Each party shall bear his or its own costs on appeal.

Sims, J., and Elkington, J., concurred.