BILL LOCKYER Attorney General CLAYTON P. ROCHE Deputy Attorney General
THE HONORABLE DICK MONTEITH, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
Where a city councilman owns 48 percent of the shares of an architectural corporation, with the remaining shares owned by three other licensed architects, and the corporation leases its premises from the councilman, may one of the other three architects establish a separate firm for the purpose of contracting with the city to provide architectural services utilizing the corporation's premises, employees, and equipment if the corporation bills the firm for its pro rata share of the rent, employees' services, and use of equipment, and the corporation does not share in the profits of the firm under the city's contracts?
 CONCLUSION
Where a city councilman owns 48 percent of the shares of an architectural corporation, with the remaining shares owned by three other licensed architects, and the corporation leases its premises from the councilman, one of the other three architects may not establish a separate firm for the purpose of contracting with the city to provide architectural services utilizing the corporation's premises, employees, and equipment even if the corporation would bill the firm for its pro rata share of the rent, employees' services, and use of equipment, and the corporation would not share in the profits of the firm from the city's contracts.
 ANALYSIS
A city councilman owns 48 percent of the stock of an architectural corporation with the remaining stock owned by three other licensed architects. The councilman is the chief executive officer and president of the corporation, and the corporation leases its premises from the councilman. Because of statutory conflict of interests provisions prohibiting the city from executing contracts with the councilman's corporation (Gov. Code, § 1090 et seq.),[1] the corporation is unable to provide architectural services to the city or the city's redevelopment agency.
In order to avoid the councilman's conflict of interests, one of his associates proposes to set up a separate firm that would contract solely with the city. Under the proposal, the corporation and the separate firm would share office space, employees, and equipment, with the corporation billing the firm on a pro rata basis for the expenses. Each entity would purchase its own supplies. May the city contract with the firm for architectural services without violating the prohibition of section1090? We conclude that it may not.
Section 1090 states in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct." (Stigall v. City of Taft (1962) 58 Cal.2d 565, 569; see Thorpe v. Long Beach Community College Dist. (2000) 83 Cal.App.4th 655, 659; Fraser-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201, 215.) The statute is applicable not only to direct interests but also to indirect interests. "California courts have . . . consistently voided . . . contracts where the public officer was found to have an indirect interest therein." (Thomson v. Call (1985) 38 Cal.3d 633, 645; see Moody v. Shuffleton (1928) 203 Cal. 100, 102-105; Terry v. Bender (1956) 143 Cal.App.2d 198,207-208; People v. Darby (1952) 114 Cal.App.2d 412, 431-432.) Moreover, the statutory prohibition cannot be avoided by having the board member with the proscribed financial interest abstain from participating in the decision-making process. (Frazer-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d at pp. 211-212.)
However, section 1090 is inapplicable if the contract falls within the scope of section 1091 or section 1091.5, specifying various "remote interests" and "noninterests" respectively. If a "remote interest" is present, the contract may be executed if the officer (1) discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the body's official records, and (3) the officer completely abstains from any participation in the making of the contract. (83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen. 230, 235-237 (1995); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, the contract may be executed without the officer's abstention or general disclosure. (City of Vernon v. Central Basin Mun. Water Dist. (1999) 69 Cal.App.4th 508, 514-515; 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).)
Examining the various arrangements proposed by the councilman's associate, we first look at the lease agreement that would be signed by the corporation and the separate firm. The corporation would, in effect, be subleasing part of its premises to the firm on a shared basis. This relationship would give rise to one of the "remote interest" exceptions "of landlord or tenant of the contracting party." (§ 1091, subd. (b)(5).) Hence, if only the proposed lease arrangements were at issue, contracts could be executed between the city and the firm if the councilman disclosed his "landlord" relationship and abstained from participating in the making of the contracts.
However, the proposal does not involve solely the sublease of a portion of the corporation's premises. In this regard, the case of Fraser-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d 201, is particularly instructive. There, a county supervisor owned 40 percent of the stock of an insurance company that provided health and accident insurance to the county prior to his election to the board of supervisors. Upon his election, he disclosed his financial interest in the corporation and agreed that he would "not participate, in any manner, in efforts to obtain, service or continue any insurance business with the county; that [he would] not participate, directly or indirectly, in any profits or losses arising out of business with the county; and that profits or losses derived from any business with the county [would] be shared by [the remaining stockholders of the corporation]." (Id. at p. 210.) Despite the supervisor's attempts to distance himself from the county's insurance business, the court concluded that the county could no longer contract with the insurance company. The court reasoned:
 "Accordingly, in the posture in which this case was presented, the only question that could be determined by the court below was whether Fraser was in conflict of interest on the basis that he had a financial interest in the contracts of insurance. It is undisputed that upon the execution of the contracts the agency had a financial interest in the contracts because it was entitled to a commission from the insurance companies out of the premiums paid by the county.
 "Although Fraser did not receive any part of these commissions he nevertheless continued to have a direct financial interest in the business affairs of the agency and to be an active participant in the conduct of its business. We do not apprehend that Fraser divested himself of his financial interest in the agency merely because he did not share in the commissions derived by the agency from the county's insurance business or merely because none of these commissions were used to defray the operating expenses of the agency. Fraser has and has had an investment in the agency represented by his partnership and shareholder interests. His interest in the agency and in any contracts from which it derives a pecuniary benefit is clearly a financial one because the financial success of the agency inures to his personal benefit. Such success, in turn, enhances the value of Fraser's interest in the agency. The record discloses that the volume of business procured and placed by the agency is an important consideration in the agency's relationship with the insurance companies. If the volume of business produced by the agency is profitable the insurance companies pay an amount to the agency on a basis of profit-sharing over and above the ordinary commissions." (Id. at pp. 214-215.)
Unlike in Fraser-Yamor, here the city councilman would not be an owner of the contracting party, the separate architectural firm, under the proposed arrangement. Would this distinction be sufficient to allow the city to contract with the firm? Whether a proscribed financial interest exists in a public contract is primarily a question of fact. (See, e.g., People v. Vallerga (1977) 67 Cal.App.3d 847, 864-866; People v. Watson (1971) 15 Cal.App.3d 28, 35; People v. Darby, supra, 114 Cal.App.2d at pp. 431-432.) In our view, the financial identity between the corporation and the separate firm would be too pervasive to allow such contracts.
First, although the corporation and the firm would constitute separate business entities, we believe that potential clients for architectural services would identify the firm with the corporation, given the sharing of offices, employees, and resources. As in Fraser-Yamor, the councilman in question could benefit indirectly from the city's contracts with the firm since the success of the firm's business could generate clients for the corporation.
More importantly, the city's payments for services would contribute to the financial health of the corporation by insuring that the rent was paid, that its employees were adequately compensated, and that necessary equipment was acquired and maintained. Obviously, if the separate firm were to default on its financial obligations, the corporation would suffer financially.[2] All of these economic effects for the corporation would in turn affect the councilman due to his ownership interest in the corporation.
Conflict of interest statutes are to be "strictly enforced" and are "strictly construed" by the courts. (69 Ops.Cal.Atty.Gen. 255, 258 (1986); see, e.g., Thomson v. Call, supra, 38 Cal.3d 633 [city official required to return $258,000 and forfeit ownership of land even though he acted in reliance upon advice of city attorney].) Accordingly, we conclude that where a city councilman owns 48 percent of the shares of an architectural corporation, with the remaining shares owned by three other licensed architects, and the corporation leases its premises from the councilman, one of the other three architects may not establish a separate firm for the purpose of contracting with the city to provide architectural services utilizing the corporation's premises, employees, and equipment even if the corporation would bill the firm for its pro rata share of the rent, employees' services, and use of equipment, and the corporation would not share in the profits of the firm from the city's contracts.[3]
[1] All references hereafter to the Government Code are by section number only.
[2] We note that for purposes of the Political Reform Act of 1974 (§§ 81000-91014), a separate conflicts of interest legislative scheme, a public official may have an economic interest in a business entity if "[t]he business entities share the use of the same offices or employees or otherwise share activities, resources or personnel on a regular basis." (2 Cal. Code Regs., § 2:18703.1, subd. (d)(2)(B)(iii).)
[3] Because of the conclusion reached, we need not consider the conflict of interests provisions of the Political Reform Act of 1974 or the common law doctrine applicable to conflict of interests. (See Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152, 1170-1171.)