BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE LYNN DAUCHER, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city contract with another city for law enforcement services where one of its council members is a retired police officer previously employed by the other city and who currently receives Public Employees Retirement System health benefits from the other city; if so, may the council member participate in the making of the contract?
 CONCLUSION
A city may contract with another city for law enforcement services where one of its council members is a retired police officer previously employed by the other city and who currently receives Public Employees Retirement System health benefits from the other city; the council member may participate in the making of the contract.
 ANALYSIS
The question presented for analysis concerns the ability of a city council of one city ("A") to contract with the city council of another city ("B") for the procurement of law enforcement services where one member of City A's city council is a retired police officer formerly employed by City B and currently receiving Public Employees Retirement System ("PERS") health benefits from City B. We conclude that the cities may execute the contract under the given circumstances and that the retired police officer may participate in the making of the contract despite receiving health benefits from City B.
The particular health benefit in question is a $325 per month contribution that the council member may apply toward health care benefits, including medical insurance coverage, sponsored by PERS. The benefit is not convertible to cash and is separate from the council member's pension benefits. The benefit results from a memorandum of understanding executed by City B and its police management association.
Government Code section 1090[1] provides in part that "city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." The purpose of the statutory prohibition "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct." (Stigall v. City of Taft (1962) 58 Cal.2d 565, 569; see Thorpe v. Long Beach Community College Dist. (2000) 83 Cal.App.4th 655,659; Fraser-Yamor Agency, Inc. v. County of Del Norte (1977)68 Cal.App.3d 201, 215.) Section 1090's provisions are applicable not only to direct interests but also to indirect interests. "California courts have . . . consistently voided . . . contracts where the public officer was found to have an indirect interest therein." (Thomson v. Call (1985) 38 Cal.3d 633, 645; see Moody v. Shuffleton (1928)203 Cal. 100, 102-105; Terry v. Bender (1956) 143 Cal.App.2d 198,207-208; People v. Darby (1952) 114 Cal.App.2d 412, 431-432.)
Section 1090, where applicable, constitutes an absolute prohibition against entering into the contract. Accordingly, the prohibition cannot be avoided by having the officer with the proscribed financial interest abstain from participating in the decision- making process. (Fraser-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d at pp. 211-212.) Although section 1090 normally is directed at agreements between a public agency and a private entity, a public officer may have a proscribed financial interest in a proposed contract between two public agencies. (78 Ops.Cal.Atty.Gen. 362, 369 (1995); see People v. Vallerga (1977) 67 Cal.App.3d 847, 870.)
Here, the City A council member is no longer an employee of City B's police department (or of City B's other departments). If he were, the contract between City A and City B for law enforcement services could still be executed, either without the council member's participation as an employee of City B's police department (§ 1091, subd. (b)(13)) or with his participation as an employee of some other City B department (§ 1091.5, subd. (a)(9)). (See 83 Ops.Cal.Atty.Gen. 246, 247-250 (2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 368-374.) Given these statutory provisions and the lack of an employment relationship between the council member and City B, we find that section 1090's prohibition is inapplicable under these unique circumstances.
We thus conclude that for purposes of section 1090, City A's council member would not be financially interested in a contract with City B for the procurement of law enforcement services even though he was formerly employed by City B's police department and is currently receiving retirement benefits from City B.[2]
In addition to section 1090, the Political Reform Act of 1974 (§§ 81000-91015; "Act") must be examined to determine whether the retired police officer may participate in negotiating or voting upon the proposed contract between City A and City B. The Act generally prohibits a public official from participating in the making of a governmental decision in which he has a financial interest. (See 78 Ops.Cal.Atty.Gen., supra, at p. 373; 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) Section 87100 provides:
"No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."
Section 87103 further states:
"A public official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, a member of his or her immediate family, or on any of the following:
[1] All references hereafter to the Government Code are by section number only.
[2] In light of this determination, it is unnecessary to consider the application of the rule of necessity which, under some circumstances, permits a governmental agency to acquire essential goods or services despite a conflict of interest. (See Eldridge v. Sierra View Local Hospital District (1990) 224 Cal.App.3d 311, 321; 78 Ops.Cal.Atty.Gen, supra, at pp. 372-373.)
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
"(c) Any source of income, except gifts or loans by a commercial lending institution made in the regular course of business on terms available to the public without regard to official status, aggregating five hundred dollars ($500) or more in value provided or promised to, received by, the public official within 12 months prior to the time when the decision is made.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
For purposes of these statutes, "income" does not include "[s]alary and reimbursement for expenses or per diem received from a state, local, or federal government agency. . . ." (§ 82030, subd. (b)(2).) The Fair Political Practices Commission ("Commission"), the administrative agency charged with enforcing the Act, has defined "salary" for purposes of section 82030, subdivision (b)(2) as follows:
 "`Salary' from a state, local, or federal government agency means any and all payments made by a government agency to a public official, or accrued to the benefit of a public official, as considerations for the public official's services to the government agency. Such payments include wages, consultants' fees, pension benefits, health and other insurance coverage, rights to compensated vacation and leave time, free or discounted transportation, payment or indemnification of legal defense costs, and similar benefits." (Cal. Code Regs., tit. 2, § 2:18232, subd. (a); italics added.)
Hence, the retired police officer's health benefits would not constitute "income" for purposes of section 87103, subdivision (c).
Two other of the Commission's regulations merit brief mention. Section2:18703.5 of title 2 of the California Code of Regulations provides:
 "A public official has an economic interest in his or her personal finances and those of his or her immediate family. A governmental decision will have an effect on this economic interest if the decision will result in the personal expenses, income, assets, or liabilities of the official or his or her immediate family increasing or decreasing."
As analyzed in discussing section 1090's language, the proposed contract between City A and City B will not "result in the personal expenses, income, assets, or liabilities of the official or his or her immediate family increasing or decreasing."
Section 2:18705.5 of title 2 of the California Code of Regulations states:
"(a) A reasonably foreseeable financial effect on a public official's personal finances is material if it is at least $250 in any 12-month period. When determining whether a governmental decision has a material financial effect on a public official's economic interest in his or her personal finances, neither a financial effect on the value of real property owned directly or indirectly by the official, nor a financial effect on the gross revenues, expenses, or value of assets and liabilities of a business entity in which the official has an investment interest shall be considered.
"(b) The financial effects of a decision which affects only the salary, per diem, or reimbursement for expenses the public official or a member of his or her immediate family receives from a federal, state, or local government agency shall not be deemed material, unless the decision is to hire, fire, promote, demote, suspend without pay or otherwise take disciplinary action with financial sanction against the official or a member of his or her immediate family, or to set a salary for the official or a member of his or her immediate family which is different from salaries paid to other employees of the government agency in the same job classification or position."
Here, the proposed contract between City A and City B would not constitute a decision "to hire, fire, promote, demote, . . . take disciplinary action with financial sanction against the official or a member of his or her immediate family," and it would not "set a salary for the official or a member of his or her immediate family which is different from salaries paid to other employees of the government agency in the same job classification or position."
Accordingly, the Act would not prohibit City A's council member from participating in the making of the contract with City B for the procurement of law enforcement services. Such treatment is consistent with our analysis of section 1090 in determining that the contract would not have a financial effect upon City A's council member.
We conclude that a city may contract with another city for law enforcement services where one of its council members is a retired police officer previously employed by the other city and who currently receives PERS health benefits from the other city; the council member may participate in the making of the contract.
 * * * * *