BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE MICHELE BEAL BAGNERIS, City Prosecuting Attorney, City of Pasadena, has requested an opinion on the following question:
Where a city proposes to enter into a development agreement with a developer, may a senior staff member of the city participate in the negotiations and drafting of the agreement if her spouse is employed by a firm that will provide outreach services for the developer with respect to the project pursuant to a yearly retainer agreement, the spouse has no ownership interest in the firm, he will not work on the city's project, and his income will not be affected by the outcome of the development agreement or the project?
 CONCLUSION
Where a city proposes to enter into a development agreement with a developer, a senior staff member of the city may not participate in the negotiations and drafting of the agreement if her spouse is employed by a firm that will provide outreach services for the developer with respect to the project pursuant to a yearly retainer agreement, even though the spouse has no ownership interest in the firm, he will not work on the city's project, and his income will not be affected by the outcome of the development agreement or project.
 ANALYSIS
The City of Pasadena ("City") proposes to enter into a development agreement with a developer pursuant to the terms of sections65864-65869.5 of the Government Code.[1] One of the City's senior staff members has substantial expertise with respect to the issues to be addressed in the development agreement. However, her spouse is employed by a firm that will provide outreach services to the developer for the project pursuant to a yearly retainer agreement. The spouse has no ownership interest in the firm, he will not work on the City's project, and his income will in no way be affected by the outcome of the development agreement or the project. May the City staff member participate in negotiating and drafting the terms of the development agreement? We conclude that she may not.
Section 1090 states in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
In examining the language of section 1090, we must determine whether a development agreement is a "contract," and if so, would it be "made" by the City staff member in question, and if so, would she be "financially interested" in it. Turning first to the definition of a contract, in 78 Ops.Cal.Atty.Gen. 230 (1995), we concluded that a development agreement executed pursuant to sections 65864-65869.5 was a "contract" within the meaning of section1090. (See also 83 Ops.Cal.Atty.Gen. 59 (2000).)[2]
Next, under the statutory scheme authorizing development agreements, such an agreement would be "made" by the city council for purposes of section 1090 (see § 65867.5), and thus each member of the city council would be prohibited from having a proscribed financial interest in the agreement. Would the prohibition also apply to a City staff member who merely negotiates and drafts the agreement's terms and conditions? Section 1090 has been broadly construed to include many of the preliminary steps in the contractual process, such as rendering advice to the public officers responsible for entering into the contract. (See City Council v. McKinley (1978) 80 Cal.App.3d 204,212-213; Schaefer v. Berinstein (1956) 140 Cal.App.2d 278, 291-292.) It prevents participation in the negotiations, reasoning, planning, and other preliminary matters prior to the contract's execution. (Stigall v. City of Taft (1962) 58 Cal.2d 565, 569-571; City Council v. McKinley, supra, 80 Cal.App.3d at p. 212; People v. Sobel (1974) 40 Cal.App.3d 1046, 1052; Millbrae Ass'n for Residential Survival v. City of Millbrae (1968)262 Cal.App.2d 222, 237; 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997).) Consequently, here, the development agreement would be considered to be "made" by the City staff member for purposes of section 1090.
Finally, if the City staff member is "financially interested" in the proposed development agreement, she would be prohibited from negotiating or drafting its terms. While she would have no direct financial interest in the agreement, her spouse is employed by a firm that provides outreach services to the developer. It has long been held that the financial interest of one spouse will be attributed to the other spouse for purposes of section 1090. (See 84 Ops.Cal.Atty.Gen. 131, 132, fn. 2 (2001); 81 Ops.Cal.Atty.Gen. 169, 171-172 (1998); 78 Ops.Cal.Atty.Gen., supra, at p. 237; 69 Ops.Cal.Atty.Gen. 102, 106 (1986).) As recently stated by the court in Thorpe v. Long Beach Community College (2000)83 Cal.App.4th 655, 659:
 "An employment contract between a school district and a school board member's spouse is subject to the scrutiny of [Government Code section 1090's] conflict of interest provisions. A board member, for example, has a community property interest in the spouse's contract with the school district, which implicates the board member's financial interests. . . ."
However, here, the City staff member's spouse is not the developer or an employee of the developer. While he works for a firm that contracts with the developer, he has no ownership interest in the firm, and his income and the firm's income will not be affected by the development agreement.[3] Moreover, he will not be working on the City's project. Under these circumstances, is the City staff member's financial interest too attenuated or minimal to come within the prohibition of section1090?
In this regard, the Legislature has expressly defined certain "remote interests" and "noninterests" that do not come within section 1090's general prohibition. If a "remote interest" is present, as defined in section 1091, the contract may be executed if the officer (1) discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the body's official records, and (3) the officer completely abstains from any participation in the making of the contract. (See 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 235-237; 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) The remote interests of section 1091 apply only to officers who are members of the board or legislative body executing the contract, and thus they would be inapplicable to the City staff member here. However, we believe that the provisions of section 1091 may be examined to determine what would otherwise be viewed by the Legislature as constituting a proscribed "financial interest."
If a "noninterest" is present, as defined in section 1091.5, the contract may be executed without the abstention of the officer or employee, and generally a noninterest does not require disclosure. (See City of Vernon v. Central Basin Mun. Water. Dist. (1999)69 Cal.App.4th 508, 515; 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).) As with section 1091, we believe the "noninterest" provisions of section 1091.5 may provide guidance as to the types of financial interests proscribed by the Legislature in section 1090.
Under subdivision (b)(8) of section 1091, a remote interest is defined to include:
 "That of a supplier of goods or services when those goods or services have been supplied to the contracting party by the officer for at least five years prior to his or her election or appointment to office."
In the circumstances presented, the spouse of the City staff member would be a supplier of services to the contracting party. Although he is not an owner, director, or officer of the firm that is providing the services to the developer and he will not personally be providing any services on the City's project, he nonetheless has provided and will provide outreach services on behalf of the firm to the developer on other projects. Accordingly, due to the language of section 1091, subdivision (b)(8), the financial interest in question must be viewed as the type of financial interest contemplated by the Legislature as being subject to the prohibition of section 1090.
The description of noninterests contained in section 1091.5
provides additional support for characterizing the financial interest held by the City staff member as proscribed by section 1090. Subdivision (a)(10) of section 1091.5 declares that an officer or employee will be deemed not to be interested in a contract if the interest is:
 "That of an attorney of the contracting party or that of an owner, officer, employee, or agent of a firm which renders, or has rendered, service to the contracting party in the capacity of stockbroker, insurance agent, insurance broker, real estate agent, or real estate broker, if these individuals have not received and will not receive remuneration, consideration, or a commission as a result of the contract and if these individuals have an ownership interest of less than 10 percent in the law practice or firm, stock brokerage firm, insurance firm, or real estate firm."
This provision is limited to specific types of employment, none of which is applicable to the City staff member's spouse. Again, this statutory exception supports characterizing the financial interest in question as one of the types of financial interests contemplated by the Legislature as being subject to the prohibition of section 1090.
It is for the Legislature to determine whether a particular financial interest should be deemed a "remote interest" or "noninterest" for purposes of section 1090. Here, the Legislature has not extended the definitions of these terms to the type of employment performed by the City staff member's spouse. Consequently, in our view, the spouse would have a proscribed financial interest in the proposed development agreement, preventing his wife from negotiating or drafting the agreement. The financial success of the spouse's firm and his continued employment and compensation would give rise to the application of section1090. (See 84 Ops.Cal.Atty.Gen. 158, 160-162 (2001).)
The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision. . . ." (Stigall v. City of Taft (1962) 58 Cal.2d 565, 569; see Thorpe v. Long Beach Community College Dist. (2000) 83 Cal.App.4th 655, 659; Fraser-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201, 215.) Section 1090
is to be interpreted broadly to cover not only direct interests but also indirect interests. "California courts have . . . consistently voided . . . contracts where the public officer was found to have an indirect interest therein." (Thomson v. Call (1985) 38 Cal.3d 633, 645; see Moody v. Shuffleton (1928) 203 Cal. 100, 102-105; Terry v. Bender (1956)143 Cal.App.2d 198, 207-208; People v. Darby (1952) 114 Cal.App.2d 412,431-432.) As we have previously noted, section 1090 is to be "strictly enforced." (69 Ops.Cal.Atty.Gen. 255, 258 (1986); see, e.g., Thomson v. Call, supra, 38 Cal.3d 633 [city official required to return $258,000 and forfeit ownership of land even though acting in reliance upon advice of city attorney].) In Fraser-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d 201, the court found a proscribed financial interest even though the officer would not directly benefit from the terms of the contract; it was ruled significant that the contract would contribute to the financial health of the contracting party with which the officer was associated. (Id. at pp. 214-215.)[4]
We conclude that where a city proposes to enter into a development agreement with a developer, a senior staff member of the city may not participate in the negotiations and drafting of the agreement if her spouse is employed by a firm that will provide outreach services for the developer with respect to the project pursuant to a yearly retainer agreement, even though the spouse has no ownership interest in the firm, he will not work on the city's project, and his income will not be affected by the outcome of the development agreement or project.
[1] All section references hereafter are to the Government Code.
[2] Development agreements are intended to assure developers that they may complete their projects under existing local rules and regulations despite possible future changes. In return, the city or county "will reap the benefit of the development, with all the conditions it might legitimately require, such as streets, parks and other public improvements or facilities." (78 Ops.Cal.Atty.Gen., supra, at p. 234.)
[3] The firm's income will not be directly affected because it provides all outreach services to the developer under a fixed yearly retainer agreement.
[4] Because of the conclusion reached herein, we need not address the possible application of the Political Reform Act of 1974 (§§81000-91014) to the City staff member's participation in negotiating or drafting the development agreement.