[No. B138537. Second Dist., Div. Two. Sept. 5, 2000.]

MARY THORPE, Plaintiff and Appellant, v.
LONG BEACH COMMUNITY COLLEGE DISTRICT et al., Defendants
and Respondents.

## COUNSEL

Lawrence Rosenzweig Professsional Corporation and Lawrence Rosenzweig for Plaintiff and Appellant.

Parker, Covert & Chidester, Spencer E. Covert and Jonathan J. Mott for Defendants and Respondents.

## OPINION

**BOREN, P. J.**—Appellant Mary Thorpe petitioned for writ of mandate (Code Civ. Proc., § 1085) to overturn the decision of respondent Long Beach Community College District (hereinafter, the Community College District) disqualifying her from consideration for promotion from her position of "Accountant" to the newly created position of "Supervisor, Accounting Special Projects." The trial court denied Thorpe's petition since her husband was a member of the Board of Trustees of the Community College District (hereinafter, the Board of Trustees), and her promotion would constitute a prohibited conflict of interest. (Gov. Code, § 1090.)[1] The court reasoned that the new position would constitute a new employment and not be within the exemption for a "spouse's employment" existing at least a year prior to the election or appointment of the Board of Trustees member. (§ 1091.5, subd. (a)(6).) We affirm.

### FACTS

Thorpe was employed at the Community College District since 1974. Since 1991, she was employed in the position of accountant in the Community College District's office of fiscal affairs. In April of 1996, Thorpe's husband was elected one of the five members of the Board of Trustees.

In July of 1998, the Personnel Commission of the Community College District created a new position entitled Supervisor, Accounting Special

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

Projects. On September 15, 1998, the Board of Trustees approved the new job classification. The position of Supervisor, Accounting Special Projects was classified as a management position, and the Board of Trustees would have to formally ratify the hiring of any candidate.

Thorpe applied for the newly created position, which would afford her a salary increase over her present salary. Thorpe's immediate supervisor initiated the idea of creating the new position. Thorpe already performed 70 percent of the duties outlined in the job description of the new position. If Thorpe were hired for the new position, she would not have to change her work location.

On October 9, 1998, the Community College District's director of human resources sent Thorpe a letter indicating that she could not be placed in the new position because her husband was a member of the Board of Trustees. The letter was accompanied by copies of Attorney General opinions interpreting the conflict of interest statute, section 1090. The letter further indicated that although she did meet the minimum qualifications for the new position and would be afforded an initial interview, under the circumstances, she could not now be certified as available to accept the position.

On October 19, 1998, the director of human resources sent Thorpe another letter, indicating that Thorpe passed all phases of the examination process and was the top-ranked applicant for the position on a promotional list of internal applicants. There was also an open list that ranked external applicants; i.e. those applicants not already employed by the Community College District. Any one of the overall top-three-ranked applicants from the combined lists could be selected to fill the position. The top-ranked applicant on the open list scored below Thorpe's score.

Despite Thorpe's ranking on the promotional eligibility list, the Community College District did not invite her for a final interview for the position. On January 26, 1999, Thorpe filed with the Community College District a claim for damages and requested the position she applied for be left vacant until the matter of her legal unavailability was resolved. However, on March 9, 1999, the top-ranked applicant on the open list was hired for the position of Supervisor, Accounting Special Projects.

Thereafter, Thorpe filed a petition for a writ of mandate. The superior court denied the petition and relied on the authority of an Attorney General opinion, 69 Ops.Cal.Atty.Gen. 255 (1986). The court ruled section 1091.5, subdivision (a)(6), permits a spouse already employed by the Community College District for more than a year before her husband became a member

of the Board of Trustees to keep her job, but does not permit promotions to a different position within the Community College District.

## DISCUSSION

■ Section 1090 is a general prohibition against an officeholder's financial interest in a contract.[2] Section 1090 prohibits any public officers or employees from having any financial interest, direct or indirect, in any contract made by them in their official capacity or by any board or commission of which they are a member. (*Thomson v. Call* (1985) 38 Cal.3d 633, 645 [214 Cal.Rptr. 139, 699 P.2d 316].)

An employment contract between a school district and a school board member's spouse is subject to the scrutiny of conflict of interest provisions. A board member, for example, has a community property interest in the spouse's contract with the school district, which implicates the board member's financial interests. (See *Reece v. Alcoholic Bev. etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 683 [134 Cal.Rptr. 698].) Where section 1090 applies, it is an absolute bar to a board or commission entering into the prohibited contract. Even if the interested board or commission member abstains from any participation in the matter, section 1090 applies to prevent fellow board or commission members from being influenced by their colleague. (*Thomson v. Call, supra,* 38 Cal.3d at p. 649; *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 215 [137 Cal.Rptr. 118].)

The object of section 1090 of prohibiting individuals "from being financially interested in any contract made by them in their official capacity or by the body or board of which they are members is to insure absolute loyalty and undivided allegiance to the best interest of the [government agency] they serve and to remove all direct and indirect influence of an interested officer as well as to discourage deliberate dishonesty. [Citations.]" (*Fraser-Yamor Agency, Inc. v. County of Del Norte, supra,* 68 Cal.App.3d at p. 215.) " 'The statute is thus directed not only at dishonor, but also at conduct that tempts dishonor. This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning

---

[2]Section 1090 provides as follows: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity. [¶] As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or propriety functions within limited boundaries."

[individuals] when their personal economic interests are affected by the business they transact on behalf of the Government. To this extent, therefore, *the statute is more concerned with what might have happened in a given situation than with what actually happened.* It attempts to prevent honest government [employees] from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation.' " (*Stigall v. City of Taft* (1962) 58 Cal.2d 565, 570 [25 Cal.Rptr. 441, 375 P.2d 289].) Section 1090 is intended to avoid even " 'the appearance of impropriety.' " (*Thomson v. Call, supra,* 38 Cal.3d at p. 648.)

Nonetheless, section 1091.5 enumerates several "noninterest" situations that arguably could implicate the prohibition against an officeholder's financial interest in a contract, but are deemed by the Legislature not to violate section 1090.[3] Thorpe urges the application of the "noninterest" exception in section 1091.5, subdivision (a)(6), which provides as follows: "(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following: [¶] . . . [¶] (6) That of a spouse of an officer or employee of a public agency in his or her spouse's employment or officeholding if his or her spouse's employment or officeholding has existed for at least one year prior to his or her election or appointment." In other words, section 1091.5 specifies that the lack of a financial conflict of interest extends to a "spouse's employment," as long as the spouse's employment by the agency existed at least one year prior to the election of the officeholder.

■ The resolution of the present appeal turns on the meaning of the word "employment" in section 1091.5, subdivision (a)(6). Should the word be narrowly construed to mean the spouse's employment in the same position, grade, or classification and thus prohibit Thorpe's promotion, as the Community College District urges? Or, should the word be broadly construed to mean the spouse's employment in any capacity with the same employer, as Thorpe urges?

■ "Where language [of a statute] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained." (*Stillwell v. State Bar* (1946) 29 Cal.2d 119, 124 [173 P.2d 313]; see *Sand v. Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].) "In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

---

[3]We also note that section 1091 exempts from the proscription of section 1090 those interests deemed too "remote" to constitute a prohibited conflict of interest.

 Thorpe contends that the statute is clear and does not provide that the previously employed spouse must keep the same position. Nor does the statute specify that a promotion is outside the conflict of interest exception granted, or that the exception is eliminated if the spouse changes jobs with the same employer. Thorpe thus construes the word "employment" as not limited to a particular position, grade, or classification, and rather as pertaining to the general employer-employee relationship. According to Thorpe, the express language of section 1091.5, subdivision (a)(6), exempts her from the general prohibition of section 1090 because she was employed at the Community College District, albeit in a different position, for well over a year before her husband became a member of its Board of Trustees.

However, a fair reading of the word "employment" could refer not simply to the status of working at a place, but in fact could entail the concept of working at a particular job or task, often with a particular title or assignment. Indeed, a common dictionary definition of "employment" is an "activity in which one engages" (Webster's 3d New Internat. Dict. (1981) p. 743), implying a particular job or task.[4] We therefore view the term "employment" as sufficiently ambiguous to warrant an inquiry into legislative history to discover the intent of the Legislature. (*Sand v. Superior Court, supra,* 34 Cal.3d at p. 570.)

However, the parties have not cited, nor could we find, any legislative history revealing the proper interpretation of the spousal interest defined in subdivision (a)(6) of section 1091.5. (Added by Stats. 1973, ch. 414, § 1, p. 879 [redesignated by Stats. 1980, ch. 110, § 2, p. 264].) We are thus left with principles of statutory construction for guidance in discerning legislative intent. (See *Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 51-52 [210 Cal.Rptr. 781, 694 P.2d 1153].)

Thorpe finds solace in several notions of statutory construction. For example, a word used in one section of a statute should be given the same meaning in other sections of the statute. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 643 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Section 1091.5, subdivision (a)(9), exempts work for other governmental agencies from the general conflict of interest rules, provided there is appropriate disclosure of the interest, and until recently amended described such work for other governmental agencies

---

[4]Interestingly, another definition of "employment," though now not in common usage, includes "An official position in the public service; a 'place' " (Oxford English Dict. (2d ed. CD-ROM 1994)), thus denoting a particular position in government employment.

with use of the word "employment."[5] Nothing in the statute as then worded limited the concept of employment to one particular job assignment.

Thorpe further points to the doctrine of in pari materia, whereby statutes relating to the same class of persons should be construed together and harmonized. (*Isobe v. Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590 [116 Cal.Rptr. 376, 526 P.2d 528]; *People v. Honig* (1996) 48 Cal.App.4th 289, 327-328 [55 Cal.Rptr.2d 555].) Thorpe observes that the word "employment" generally means an employer-employee relationship (see, e.g., *Bevan v. California Emp. Stab. Com.* (1956) 139 Cal.App.2d 668, 681 [294 P.2d 524]), and in the school district context that word is frequently used in the Education Code with that meaning.

For example, "employment" is used in the broad sense and not restricted to a particular assignment, position, grade, or classification with respect to prohibiting school districts from retaining persons convicted of certain criminal offenses (Ed. Code, § 44836), and regulating temporary employees in school districts (Ed. Code, § 44920). Thorpe thus urges that the limited interpretation of the word "employment" imposed by the trial court is not supported by the general usage of the word.

Nonetheless, other countervailing factors and more specific principles of statutory construction dictate a contrary conclusion. We find persuasive the analysis in two Attorney General opinions (80 Ops.Cal.Atty.Gen. 320 (1997) and 69 Ops.Cal.Atty.Gen. 255, *supra*) which were relied upon by the Community College District.

As the Supreme Court has observed in the context of a different legislative scheme, "While the Attorney General's views do not bind us [citation], they are entitled to considerable weight [citation]. This is especially true here since the Attorney General regularly advises many local agencies about the meaning of the [statutory scheme in question] and publishes a manual designated to assist local governmental agencies in complying with the Act's . . . requirements." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829 [25 Cal.Rptr.2d 148, 863 P.2d 218].) The Attorney General opinions at issue here, though only advisory, are similarly entitled to "considerable weight" because the Attorney General regularly advises local agencies about conflicts of interest and publishes a manual designated to assist local governmental agencies in complying with the conflict of interest statutes. Reliance

---

[5]Section 1091.5, subdivision (a) (9) was recently amended (Stats. 1999, ch. 349, § 2) and narrowed by specifying there would be no prohibited conflict of interest unless the contract directly involves the department of the governmental entity that employs the officer or employee. The amendment also changed the language "compensation for employment" to "a person receiving salary, per diem, or reimbursement for expenses from a government entity."

on Attorney General opinions is particularly appropriate where, as here, no clear case authority exists, and the factual context of the opinions is closely parallel to that under review. (See *Mallett v. Superior Court* (1992) 6 Cal.App.4th 1853, 1869 [8 Cal.Rptr.2d 829]; *Alexander v. Board of Trustees* (1983) 139 Cal.App.3d 567, 574 [188 Cal.Rptr. 705].)

Specifically, two Attorney General opinions have addressed the issue of whether "employment" of one spouse prior to the other spouse's election or appointment for one year or more means *any* employment, or the *same* employment with the school district. (80 Ops.Cal.Atty.Gen., *supra,* at pp. 321-322; 69 Ops.Cal.Atty.Gen., *supra,* at p. 257.) In these opinions, the Attorney General concluded that a *promotion* approved by the school board after the employee's spouse is elected to the school board is prohibited. The Attorney General's analysis turned on whether the promotion was of the type that required some action of approval by the board.

According to the Attorney General, if a promotion involved no action by the board, it would qualify as such a sufficiently similar employment as to amount to the same employment. For example, as noted by the Attorney General, such a situation would occur where there was a regular salary or merit step increase that typically requires no direct board action.

On the other hand, the Attorney General concluded that if the employee's new position entailed a promotion, specifically citing the case of movement from employment as an accountant I to the higher grade of accountant II, such a promotion would require the approval of the board and constitute a prohibited conflict of interest under section 1090. (69 Ops.Cal.Atty.Gen., *supra,* at pp. 259-260.) The Attorney General also applied the same board approval standard in opining that a substitute teacher could not be allowed to continue employment or be hired into another position because such a placement would require board approval while her spouse was on the board. (80 Ops.Cal.Atty.Gen., *supra,* at p. 321.)

Moreover, the Attorney General's analysis persuasively and properly relied upon applicable principles of statutory interpretation requiring strict construction of language to further the salutary purpose of the conflict of interest statutes. Section 1091.5, subdivision (a)(6), constitutes an exception to section 1090's conflict of interest prohibition. " 'An exception contained in a statute to the general rule laid down therein must be strictly construed.' (Marrujo v. Hunt (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220], and cases cited therein.) Likewise '[s]tatutes prohibiting such "conflict of interest" by a public officer are strictly enforced' (Terry v. Bender (1956) 143

Cal.App.2d 198, 207 [300 P.2d 119]; [Thomson] v. Call[, *supra,*] 38 Cal.3d [at p.] 650) and have been strictly construed by the courts (e.g. Stigall v. City of Taft[, *supra,*] 58 Cal.2d 565; Fraser-Yamor Agency, Inc. v. County of Del Norte[, *supra,*] 68 Cal.App.3d [at pp.] 214-215; People v. Watson (1971) 15 Cal.App.3d 28 [92 Cal.Rptr. 860]) to further their salutary purpose. [¶] Accordingly, given the possible constructions of any employment or the same employment in subdivision (a)(6) of section 1091.5 . . . we choose the stricter interpretation, that is, the same employment." (69 Ops.Cal.Atty.Gen., *supra*, at p. 258.)

In addition, contrary to Thorpe's assertion, the new position she seeks would constitute a new employment and not merely a restructuring of her present job. The new position would have resulted in a pay increase for Thorpe, a new title, a new job description, substantial additional duties, and movement from a classified position in a bargaining unit to a supervisory position without a bargaining unit.

Equally unavailing is Thorpe's contention that the existence of a district personnel commission eliminates the possibility of favoritism in the selection process. The Board of Trustees approves the creation of new positions and hires employees to fill positions. (Ed. Code, § 88061.) The role of the personnel commission is limited to classifying the position once the Board of Trustees approves the creation of the position. (Ed. Code, § 88076.)

In the present case, the Board of Trustees approved the new position of Supervisor, Accounting Special Projects. Administrative staff, not the personnel commission, then interviewed eligible applicants and made a recommendation to the Board of Trustees, which had the discretion to hire any of the eligible candidates from the top three candidates certified by the personnel commission. (Ed. Code, § 88091, subd. (a).) The personnel commission does not make hiring recommendations or hire the applicant. The power to contract with an applicant remains with the Board of Trustees (Ed. Code, § 88061), and the prohibited conflict of interest would occur here despite the existence of the personnel commission.

We acknowledge that our interpretation of the exception in section 1091.5, subdivision (a)(6), may result in adverse financial consequences for families in today's modern reality where both spouses are often employed in a field of their mutual interest. However, there is no merit to Thorpe's contention that California's public policy in support of marriage (see, e.g., *Norman v. Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 9 [192 Cal.Rptr. 134, 663 P.2d 904]) should lead to a situation where one government-employed spouse is permitted to vote on the employment contract of

the other spouse. Courts have long sanctioned conflict of interest prohibitions that, as here, have only an indirect or incidental impact on the institution of marriage. (See *Kimura v. Roberts* (1979) 89 Cal.App.3d 871 [152 Cal.Rptr. 569] [wife removed from city planning commission when husband elected to city council].)

Accordingly, we conclude the intent of section 1091.5, subdivision (a)(6), is to continue the status quo as to a spouse already employed for over a year, but to prohibit the spouse's employment in a different position that requires approval of the Board of Trustees of which the employee's spouse is a member. The trial court properly held that the exception in section 1091.5, subdivision (a)(6), to the conflict of interest proscription is not applicable to Thorpe.

## DISPOSITION

The judgment is affirmed.

Nott, J., and Cooper, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2000.