[No. A105446. First Dist., Div. Four. Sept. 24, 2004.]

WILLIAM M. MOORES et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF MENDOCINO COUNTY, Defendant and
Respondent.

## COUNSEL

Carter, Behnke, Oglesby & Bacik and Ginevra King Chandler for Plaintiffs and Appellants.

H. Peter Klein, County Counsel, and Frank Edward Zotter, Jr., Chief Deputy County Counsel, for Defendant and Respondent.

## OPINION

**KAY, P. J.**—This appeal involves concepts of merger and unmerger of contiguous parcels having common ownership under the Subdivision Map Act (Gov. Code, § 66410 et seq.).[1] Plaintiffs William M. Moores and Tona E. Moores brought suit for declaratory relief and for a writ of administrative mandate directing defendant Board of Supervisors for the County of Mendocino (County) to set aside a determination that plaintiffs' parcels were

---

[1] Statutory references are to this code unless otherwise indicated.

merged. The trial court agreed with the County that its merger determination was proper according to state and local law. We affirm.

## BACKGROUND

The history of this dispute and the litigation it produced is largely without dispute and does not take long to relate.

Starting in 1996, the County has taken the position that the four contiguous parcels owned by plaintiffs have merged into one. Plaintiffs maintain there has been no merger because the County did not comply with its own ordinances. After informal discussion with the county counsel failed to relieve the impasse, plaintiffs appealed to the county planning commission the county counsel's opinion that the parcels were merged. After the commission upheld the county counsel's opinion, plaintiffs appealed to the county board of supervisors, which refused to overturn the commission's decision. Plaintiffs thereupon commenced this litigation. The trial court agreed with the County's interpretation of the governing statutes and ordinances. Following entry of a judgment denying them relief, plaintiffs filed a timely notice of appeal.

## REVIEW

### I

Resolution of this appeal requires an understanding of a number of provisions of the Subdivision Map Act, its approaches to merger and un-merger, and two related ordinances adopted by the County.

■ Until 1983, merger was left largely to local law. (See *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 752–754 [29 Cal.Rptr.2d 804, 872 P.2d 143]; Stats. 1976, ch. 928, § 4, p. 2120, adding former § 66424.2, providing that undersized, unimproved, contiguous parcels held by the same owner would merge "unless a local ordinance specifically exempts such parcels"; 69 Ops.Cal.Atty.Gen. 209, 210 (1986).) Since 1983, however, the Subdivision Map Act constitutes "the sole and exclusive authority for local agency initiated merger of contiguous parcels. On and after January 1, 1984, parcels may be merged by local agencies only in accordance with the authority and procedures prescribed by this article." (§ 66451.10, subd. (b), added by Stats. 1983, ch. 845, § 2, pp. 3097–3098.) Another provision grants that "[a] local agency may, by ordinance which conforms to and implements the procedures prescribed by this article [i.e., art. 1.5," 'Merger of Parcels,' "§§ 66451.10–66451.21], provide for the merger of a parcel or unit with a contiguous parcel or unit held by the same owner" if a number of requirements are met. (§ 66451.11.) Among them is that "[t]he owner of the affected

parcels has been notified of the merger proposal pursuant to Section 66451.13, and is afforded the opportunity for a hearing pursuant to Section 66451.14." (*Id.*, subd. (c).)[2] Failure to comply with these requirements "shall render void and ineffective any resulting merger" (§ 66451.19, subd. (d)).

All of these statutes are in the article governing merger, which was added to the Subdivision Map Act in 1983. (Stats. 1983, ch. 845, § 2, p. 3097.) Immediately, questions arose as to the validity of mergers completed pursuant to local ordinance prior to enactment of these state statutes. Two years later, the article governing "Unmerger of Parcels" (art. 1.7, §§ 66451.30–66451.33) was amended to provide:

"If any parcels or units of land merged under a valid local merger ordinance which was in effect prior to January 1, 1984, but for which a notice of merger had not been recorded before January 1, 1988, and one or more of the merged parcels or units of land is within one of the categories specified in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 66451.30,[3] the parcels or units of land shall be deemed not to have merged unless all of the following conditions exist:

"(a) The parcels or units are contiguous and held by the same owner.

"(b) One or more of the contiguous parcels or units do not conform to minimum parcel size under the applicable general plan, specific plan, or zoning ordinance.

"(c) At least one of the affected parcels is undeveloped by any structure for which a building permit was issued or for which a building permit was not required at the time of construction, or is developed only with an accessory structure or accessory structures, or is developed with a single structure, other than an accessory structure, that is also partially sited on a contiguous parcel or unit.

---

[2] Section 66451.13 provides in pertinent part: "Prior to recording a notice of merger, the local agency shall cause to be mailed by certified mail to the then current record owner of the property a notice of intention to determine status, notifying the owner that the affected parcels may be merged pursuant to standards specified in the merger ordinance, and advising the owner of the opportunity to request a hearing on determination of status and to present evidence at the hearing that the property does not meet the criteria for merger . . . ." Section 66451.14 provides: "At any time within 30 days after recording of the notice of intention to determine status, the owner of the affected property may file with the local agency a request for a hearing on determination of status."

[3] This section deals with land devoted to certain uses—timberland, mining extraction, open-space, and inclusion within the coastal zone—that are commonly known as "resource lands." There is no dispute that plaintiffs' parcels qualify and have been zoned as resource lands since 1977.

"(d) The parcels or units which do not conform to minimum parcel size were not created by a recorded parcel or final map. . . . " (§ 66451.301, added by Stats. 1985, ch. 796, § 5, p. 2575 [hereinafter section .301].) Plaintiffs concede that their parcels satisfy all of these conditions.

■ At the same time the Legislature enacted a provision requiring local agencies to notify owners of merged parcels before January 1, 1987 of the new provisions for merger. (§ 66451.302, added by Stats. 1985, ch. 796, § 6, pp. 2574–2576 [hereinafter section .302].)

The County has had a merger ordinance since October 1981. Entitled "Merger," it provides in pertinent part: "Merger of lots, parcels and units of land classified or zoned range land, forest land, or agricultural land or a successor zone under the Mendocino County Code, as amended, shall occur when at least two contiguous lots, parcels or units of land are held by the same owner, one of which does not conform to standards for minimum parcel size to permit use or development . . . and at least one of such contiguous parcels or units is not developed with a building for which a permit has been issued by the County or which was built prior to the time that building permits were required by the County. . . ." (Mendocino County Code, § 17-106.)

This provision was reenacted in January of 1982, together with a new provision entitled "Due Process." The relevant language of the new ordinance reads: "Whenever the Mendocino County Planning Department has knowledge that real property has merged pursuant to Section 17-106 of the Mendocino County Code, it shall cause to be filed for the record with the recorder of the County . . . a notice of such merger specifying the names of the record owners and particularly describing the real property, provided that, at least 30 days prior to the recording of the notice, the owner of the parcels or units to be affected by the merger, shall be advised in writing of the intention to record the notice specifying the time, date and place at which the owner may present evidence to the Planning Commission as to why such notice should not be recorded. The decision of the Planning Commission may be appealed to the Board of Supervisors." (Mendocino County Code, § 17-108.)

In accordance with section .302, the County notified plaintiffs in December of 1986 that their parcels may have merged unless qualified for exemption according to section .301.[4]

---

[4] The letter, addressed "Dear Property Owner," advised that "[t]he County of Mendocino is required, by a recent state law [i.e., § .301], to notify any property owners whose property may be subject to the County's Merger Ordinance. Because this notice is being sent to so many [approximately 2,300] property owners it was not possible to review each case individually,

## II

Plaintiffs' major contention is that their parcels have not merged, or should be treated as unmerged, because the County did not comply with its own merger ordinances, particularly the notice recording provision of Mendocino County Code section 17-108. Moreover, the County also did not comply with the equivalent notice provision of state law (§ 66451.13, quoted at fn. 2, *ante*). Plaintiffs see sections .301 and .302 as bringing no aid to the County because "the purpose of the legislation was to allow the County additional time to provide notice to property owners of potential merger, not to avoid giving such notice." Therefore, plaintiffs reason, the merger attempted or accomplished by the County is "void and ineffective" (§ 66451.19, subd. (d)).

The County's position is that plaintiffs' parcels merged with the adoption of Mendocino County Code section 17-106 in 1981, before a notice provision was imposed by the County the following year, and by the Legislature with enactment of the Subdivision Map Act in 1983. The only subsequent requirement was that the County notify property owners in accordance with section .302, which it did. The trial court agreed with the County's analysis. So do we.

■ The County's merger ordinance specified that parcels would be merged "upon the effective date of this ordinance . . . ." This is an example of what is known as "automatic merger," requiring no additional steps to take effect. Because this occurred through legislation, due process did not require notice and opportunity for a hearing. (E.g., *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612–616 [156 Cal.Rptr. 718, 596 P.2d 1134]; *San Diego Bldg. Contractors Assn. v. City Council* (1974) 13 Cal.3d 205, 210–211 [118

---

therefore, the information provided is general in nature. [¶] [] The effect of the recent state law change and the County's Merger Ordinance is that any land which is in the Agricultural Preserve Program . . . or is zoned Timber Production Zoning (TPZ) will remain subject to merger or merged . . . . [¶] . . . [¶] NOTE: Your property is zoned one of the above. . . . [¶] . . . [¶] This notice was sent to all property owners whose property is in the Agricultural Preserve Program or is zoned TPZ. Because of the magnitude of this mailing, it has not been possible to review each property to determine if it is exempt from merger. It is IMPORTANT that you are aware of several exemptions to the County's Merger Ordinance."

The letter goes on to notify the recipient that "your property is not merged if any of the following conditions exists: [¶] a. A subdivision of land was processed and the subdivision was approved pursuant to the County's Subdivision Ordinance. [¶] b. Each of the parcels was acquired by the current owner or the immediate previous owners on separate deeds. [¶] c. The parcels are not contiguous. [¶] d. Each of the parcels have a structure (other than an accessory structure) for which a building permit was issued or for which a building permit was not required at the time of construction." The letter concluded by "strongly suggest[ing] that you contact, within the next few months, the County Planning and Building Services Department and/or an attorney if you have any questions."

Cal.Rptr. 146, 529 P.2d 570]; *California Gillnetters Assn. v. Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1160 [46 Cal.Rptr.2d 338].) The County's subsequent enactment of an ordinance providing for recording of notice and a hearing did not result in unmerging parcels already automatically merged the previous year by operation of law.

■ Even if that was the intention of the notice ordinance, it was to preserve such mergers that sections .301 and .302 were adopted. Sections .301 and .302 express a conscious policy decision by the Legislature not to unmerge resource land mergers accomplished by local ordinances, and not to subject their legality to the requirement of recorded notice. There is a sound basis for believing that these statutes were specifically enacted with Mendocino in mind. The author of the bill enacting sections .301 and .302 advised the Legislature: " 'The current merger law specifies that if by January 1, 1986, cities and counties haven't notified the owners of merged parcels that those lots have been merged, the property will automatically unmerge. We now know that this would be disastrous for some counties which merged hundreds of parcels . . . . [¶] The problem which we are trying to fix with AB 643 is serious in Mendocino County. . . . [¶] The County believes that these parcels have merged under their local ordinance and ought to stay merged. The only way to keep them from unmerging next January, however, is to do a complex title search . . . on each piece of property . . . . The County simply does not have the staff or money to complete this task by January and has asked for relief . . . .' " (See 69 Ops.Cal.Atty.Gen. 209, 213.) The Legislature responded by enacting sections .301 and .302 as urgency legislation; they became effective on September 19, 1985. (Stats. 1985, ch. 796, §§ 5–6, pp. 2575–2577.) The plain import of sections .301 and .302 was to preserve mergers accomplished through local law by exempting them from the require-ment of recorded notice and allowing the more informal notice outlined in section .302. Imposing the recorded notice requirement of Mendocino County Code section 17-108 would contravene the purpose of sections .301 and .302, and would encroach upon a subject impliedly preempted by state law. (See, e.g., *Morehart v. County of Santa Barbara, supra,* 7 Cal.4th 725, 751, 762–763.)

■ Section 66451.19 does not aid plaintiffs. Its subdivision (a) provides in pertinent part: "Except as provided in Sections . . . 66451.301, and 66451.302, a city or county shall no later than January 1, 1986, record a notice of merger for any parcel merged prior to January 1, 1984. After January 1, 1986, no parcel merged prior to January 1, 1984, shall be considered merged unless a notice of merger has been recorded prior to January 1, 1986." The plain language of this statute, read together with section .301, is that situations dealt with by sections .301 and .302 are expressly exempt from the requirement that a notice of merger must be filed

prior to January 1, 1988. Resource lands that have been merged by a local ordinance are not subject to the otherwise general principle that failure to comply with the Subdivision Map Act article on merger or local merger ordinances "shall render void and ineffective any resulting merger" (§ 66451.19, subds. (d), (e)).

Section .301 addresses the precise situation before us. By sending plaintiffs the letter satisfying the provisions of section .302 (see fn. 4 and accompanying text, *ante*), the County preserved the automatic merger of parcels accomplished by operation of law when it first enacted its merger ordinance in October of 1981.[5] The County's compliance with section .302 renders moot the issue of any lack of compliance by the County with its own notice ordinance (Mendocino County Code, § 17-108).[6]

### III

Plaintiffs' final contention is that the letter mailed by the County in December of 1986 did not satisfy section .302 because it did not request a return receipt. As for the mailed notices, plaintiffs argue none was actually received by them, and not all owners of record were mailed the notice.

Section .302 does not require use of return receipts. The Legislature knows how to impose such a requirement. (See, e.g., Civ. Code, §§ 798.55, 1584.6; Code Civ. Proc., §§ 116.330, 415.40.) It did not do so, and it is not a judicial function to rewrite the statute by inserting such a requirement. (E.g., *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 573 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)

---

[5] We note a very persuasive opinion by the Attorney General, requested by the Mendocino County Counsel, which has been helpful to our analysis. Asked "May a county with a valid merger ordinance in existence prior to January 1, 1984, continue to treat 'resource lands' as merged thereunder where the county has not given notice of the merger to the landowner or recorded a notice of the merger?" the Attorney General answered affirmatively. (69 Ops.Cal.Atty.Gen. 209 (1986).) This opinion is not binding, but we have accorded it considerable respect. (E.g., *Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 151 [122 Cal.Rptr.2d 425]; *Thorpe v. Long Beach Community College Dist.* (2000) 83 Cal.App.4th 655, 662 [99 Cal.Rptr.2d 897].)

[6] In light of this conclusion, there is no need to determine whether the County planning department had "knowledge" that plaintiffs' parcels had merged, thus triggering the provisions of Mendocino County Code section 17-108. In any event we would agree with the trial court that there is insufficient evidence in the record to prove the necessary predicate—the prior legal existence of separate parcels.

The County presented evidence that plaintiffs, as owners of record shown by the record of the county assessor, were sent three letters pursuant to section .302. This created a presumption that plaintiffs received the notices. (E.g., *Conservatorship of Wyatt* (1987) 195 Cal.App.3d 391, 396 [240 Cal.Rptr. 632].) The trial court impliedly found that plaintiffs had not rebutted it. The court also found that plaintiffs had failed to demonstrate the existence of any actual owners of record who were not sent notice. Plaintiffs cite to nothing in the record to show that the court's findings are not supported by substantial evidence. Their claim fails accordingly. (E.g., *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887–888 [160 Cal.Rptr. 516, 603 P.2d 881].)

## DISPOSITION

The judgment is affirmed.

Sepulveda, J., and Rivera, J., concurred.