BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General.
THE HONORABLE GEORGE RUNNER, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city council donate public funds to a chamber of commerce, operating as a nonprofit corporation, if a council member is the president of the chamber and his spouse is an employee of the chamber?
 CONCLUSION
A city council may donate public funds to a chamber of commerce, operating as a nonprofit corporation, even though a council member is the president of the chamber and his spouse is an employee of the chamber, provided that the council member discloses to the city council his financial interest in the donation, the interest is noted in the city council's official records, and the council member does not participate in the making of the donation.
 ANALYSIS
We are informed that a city council intends to make a contribution of city funds to a chamber of commerce ("chamber"), a registered nonprofit corporation, having two ties to the city council: a council member serves as the chamber's president, and the council member's spouse is an employee of the chamber. May the contribution be made under these circumstances? We conclude that the city council may contribute the public funds to the chamber if specified conditions are met.
Government Code section 1090[1] provides in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
Section 1090 codifies the common law prohibition against "self-dealing" with respect to contracts. (See Stigall v. City of Taft (1962)58 Cal.2d 565, 571; City of Oakland v. California Const. Co. (1940) 15 Cal.2d 573,576; Breakzone Billiards v. City of Torrance (2000) 81 Cal.App.4th 1205,1230; Stockton P. S. Co. v. Wheeler (1924) 68 Cal.App. 592, 597.) "[T]he prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996) 48 Cal.App.4th 289,333.)
Section 1090's prohibition is intended to promote an officer's or employee's ability to discharge his or her duties with only the public's well-being in mind. (See Thomson v. Call (1985) 38 Cal.3d 633, 647-648
["no man can faithfully serve two masters whose interests are or may be in conflict"].) Its application represents neither a finding of actual wrongdoing nor an assumption of improper conduct; rather, the statute" ` "is more concerned with what might have happened . . . than with what actually happened." ` " (Id. at p. 648.) It operates as a protective barrier, preventing government agents from entering" ` "relationships that are fraught with temptation," ` " thus ensuring that public officers and employees may devote "undivided and uncompromised allegiance" to their public duties. (Ibid.; see also People v. Honig,supra, 48 Cal.App.4th at p. 314.)
When the officer with the proscribed financial interest is a member of a public body or board, the prohibition extends to the entire body or board. As the court observed in Fraser-Yamor Agency, Inc. v. County ofDel Norte (1977) 68 Cal.App.3d 201, 211-212:
 ". . . [W]here the contract is entered into by the body or board of which the employee or officer is a member, the element of participation is present by the mere fact of such membership irrespective of whether the employee or officer personally abstains from engaging in any of the embodiments resulting in the making of the contract. This interpretation is evident from the language of the statute which, in pertinent part, provides that an officer or employee `shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . .'" (Fn. omitted.)
Accordingly, absent some exception to the rule, a contract made by a city council would be void where a council member had a conflicting financial interest, even if the financially interested member did not participate in any of the steps involved in making the contract. (SeeThomson v. Call, supra, 38 Cal.3d at p. 649; Stigall v. City of Taft,supra, 58 Cal.2d at pp. 570-571.)
In the situation presented here, a city council plans to contribute money to a nonprofit chamber of commerce. To resolve whether the donation would be permitted under section 1090, we must consider two issues: (1) would the donation constitute a "contract" within the meaning of section 1090; and (2) would the council member's connection to the chamber constitute a "financial interest" for purposes of section 1090's prohibition?
In determining whether the proposed donation would constitute a "contract," we may look to general principles of contract law (see84 Ops.Cal.Atty.Gen. 34, 36 (2001); 78 Ops.Cal.Atty.Gen. 230, 234 (1995)), while keeping in mind that "specific rules applicable to sections 1090 and 1097 require that we view the transactions in a broad manner and avoid narrow and technical definitions of `contract' " (People v. Honig,supra, 48 Cal.App.4th at p. 351, citing Stigall v. City of Taft,supra, 58 Cal.2d at pp. 569, 571).[2]
In Honig, the court rejected a claim that "grants" were outside the scope of section 1090, observing that "sections 1090 and 1097 are concerned with the conduct of government officials rather than technical rules governing the making of contracts," and that, accordingly, "we may not give those provisions a narrow and technical interpretation that would limit their scope and defeat the legislative purpose." (People v.Honig, supra, 48 Cal.App.4th at p. 350.) The court reasoned:
 "We are not convinced that calling the QEP transactions `grants' rather than `contracts' would have any effect on the applicability of sections 1090 and 1097. Defendant points out that in enacting the Civil Code in 1872, the Legislature defined a contract and provided for its essential elements in Civil Code sections 1549 and 1550. At the same time the Legislature defined `grant' in Civil Code section 1053 as a transfer in writing. Defendant asserts that these terms must be mutually exclusive and that `contract' must not include `grant.' However, contemporaneously with the adoption of Civil Code sections 1053, 1549 and 1550, the Legislature enacted Civil Code section 1040 to provide: `A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity.' Pursuant to Civil Code section 1040 the Legislature included `grants' within the broader subject of `contracts' and subjected them to the same rules of law. Accordingly, where a state official makes a contract in which he has a financial interest we see no basis upon which he can escape responsibility under sections 1090 and 1097 by claiming that the transfer was actually a `grant.' " (Id. at pp. 349-350.)
In 85 Ops.Cal.Atty.Gen. 176 (2002), we considered a city council's proposed grant of public funds to a nonprofit corporation. We concluded that, if a city council member were to become the salaried executive director of the corporation, then "[w]ith respect to any grants the city council might now wish to make to the nonprofit corporation, the general terms of section 1090 would apply." (Id. at p. 177, fn. omitted.)
Significantly, in various provisions related to section 1090, the Legislature has expressly included "grants" within specific exceptions to the contract prohibition, indicating that these transactions would otherwise be included within the scope of the general prohibition. (See, e.g., §§ 1091.2 ["grant" made by local workforce investment boards], 1091.3 ["grant" made by county children and families commissions], 1091.5, subd. (a)(12) ["grants" to nonprofits having conservation of parks and natural lands as primary purpose]; see also85 Ops.Cal.Atty.Gen. 87, 89 (2002) [applying section 1091.2].)
Furthermore, a finding that a "donation" of city funds would constitute a "contract" for purposes of section 1090 would be consistent with the constitutional prohibition against government officials' making gifts of public funds. Article XVI, section 6, of the Constitution prohibits the making of "gifts" of "any public money or thing of value to any individual, municipal or other corporation whatever. . . ." This gift prohibition applies to local governmental agencies as well as to the Legislature. (See Community Memorial Hospital v. County ofVentura (1996) 50 Cal.App.4th 199, 207; Paramount Unified School Dist.v. Teachers Assn. of Paramount (1994) 26 Cal.App.4th 1371, 1388;Goodall v. Brite (1936) 11 Cal.App.2d 540, 544-545;83 Ops.Cal.Atty.Gen. 45, 47 (2000).) However, as we recently noted in88 Ops.Cal.Atty.Gen. 213, 215 (2005), the rule does not prohibit an expenditure which, though "incidentally beneficial to a private recipient, promotes a valid and substantial public purpose within the authorized mission of the public agency appropriating the funds." Whether a particular proposed expenditure sufficiently serves an authorized public purpose "is primarily a legislative determination that will not be disturbed by the courts so long as it has a reasonable basis." (75 Ops.Cal.Atty.Gen. 20, 24 (1992); see also87 Ops.Cal.Atty.Gen. 164, 166-167 (2004).)
Since a city council may not lawfully expend public fundsunless the expenditure furthers a valid and substantial public purpose within its authorized duties and responsibilities, it follows that the contractual element of "consideration" would be satisfied by the advancement of that legitimate and permissible public purpose even though the funds are denominated a "gift," "donation," "contribution," "grant," or otherwise. (See, e.g., California Housing Finance Agency v.Elliott (1976) 17 Cal.3d 575, 583 [benefit to public from expenditure for public purpose "is in the nature of consideration, and the funds expended are therefore not a gift"], quoting County of Alameda v.Carleson (1971) 5 Cal.3d 730, 745-746; see also85 Ops.Cal.Atty.Gen. 123, supra, at pp. 128-129.)[3]
Having found the presence of a "contract" for purposes of section 1090, we turn to whether the city council member would have a proscribed financial interest in the making of the contribution to the chamber of commerce. Any donation of city funds would enhance the chamber's financial condition, thus increasing its ability to pay, for example, the salaries and expenses of its officers (the council member) and employees (the council member's spouse). (See, e.g., Thomson v. Call,supra, 38 Cal.3d at p. 645 [financial interests include both direct and indirect interests in a contract]; 86 Ops.Cal.Atty.Gen. 138, 140-141
(2003); 85 Ops.Cal.Atty.Gen., surpa, at p. 36; 58 Ops.Cal.Atty.Gen., supra, 676-678.) In this regard, we note that the following definition of the term "financially interested" has received judicial recognition:
 "The phrase `financially interested' as used in Government Code section 1090 means any financial interest which might interfere with a city officer's unqualified devotion to his public duty. The interest may be direct or indirect. It includes any monetary or proprietary benefit, or gain of any sort, or the contingent possibility of monetary or proprietary benefits. The interest is direct when the city officer, in his official capacity, does business with himself in his private capacity. The interest is indirect when the city officer, or the board of which he is a member, enters into a contract in his or its official capacity with an individual or business firm, which individual or business firm, by reason of the city officer's relationship to the individual or business firm at the time the contract is entered into, is in a position to render actual or potential pecuniary benefits directly or indirectly to the city officer based on the contract the individual or business firm has received."
This definition has been approved by the courts in a variety of contexts. (See People v. Gnass 101 Cal.App.4th 1271, 1299, fn. 9 (2002);People v. Honig, supra, 48 Cal.App.4th at pp. 322-323, 332; People v.Vallerga 67 Cal.App.3d 847, 867 (1977); People v. Watson15 Cal.App.3d 28, 37-38 (1971); People v. Darby 114 Cal.App.2d 412, 433-436 (1952).)
Accordingly, consistent with this approved definition, as well as prior case law, opinions of this office, and related statutory provisions, we believe that the interests of the city council member and his spouse in the proposed donation would constitute "financial interests" under section 1090's general prohibition.
However, section 1090 does not stand alone. The Legislature has defined certain financial interests as "remote interests" (§ 1091), and has deemed others to be "noninterests" (§ 1091.5), both of which escape the absolute proscription of section 1090.[4] In the case of a "remote interest," section 1091 permits execution of the contract if (1) the interested officer discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the agency's official records, and (3) the officer abstains from any participation in the making of the contract. (See89 Ops.Cal.Atty.Gen. 49, 52-54 (2006); 88 Ops.Cal.Atty.Gen. 106, 108 (2005);87 Ops.Cal.Atty.Gen. 23, 25-26 (2004); 83 Ops.Cal.Atty.Gen. 246, 248
(2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 235-237;65 Ops.Cal.Atty.Gen. 305, 307 (1982).)[5] If a "noninterest" is present, as defined in section 1091.5, the contract may be made with the officer's or employee's participation, and disclosure of the noninterest is not generally required. (See City of Vernon v. Central Basin Mun.Water. Dist. (1999) 69 Cal.App.4th 508, 515; 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).)
Here, we find that the particular interests held by the council member and his spouse fall under the remote interest exception specified in section 1091, subdivision (b)(1):
 "That of an officer or employee of a nonprofit entity exempt from taxation pursuant to Section 501(c)(3) of the Internal Revenue Code (26 U.S.C. Sec. 501(c)(3)) or a nonprofit corporation, except as provided in paragraph (8) of subdivision (a) of Section 1091.5."[6]
We briefly summarized this remote interest exception in85 Ops.Cal.Atty.Gen. 176, supra, where we considered a city council's proposed grant of public funds to a nonprofit corporation when a council member was interested in becoming the corporation's executive director:
 "Subject to an exception not pertinent here, subdivision (b)(1) of section 1091 specifies as a `remote interest' the interest a public officer has as `an officer or employee of a nonprofit corporation.' Here, the council member's financial interest meets the test of a remote interest as set forth in section 1091, subdivision (b)(1). Accordingly, grants by the city to the nonprofit corporation may be made as long as the city council member follows the disclosure and other requirements of section 1091. [Citation.]" (Id. at p. 178.)
Here, the city council member would have not only his own financial interest in the proposed donation but also that of his wife; he "stands in the shoes of his spouse" for purposes of section 1090. (SeeThorpe v. Long Beach Community College (2000)83 Cal.App.4th 655, 659; Nielsen v. Richards (1925)75 Cal.App. 680; 85 Ops.Cal.Atty.Gen., supra, at p. 36.) He must therefore be considered both an "officer" and an "employee" of the chamber of commerce in the described circumstances. Nevertheless, since the exception of section 1091, subdivision (b)(1), applies to both officers and employees, his financial interest would come within the statutory language.
We thus conclude that a city council may donate public funds to a chamber of commerce, operating as a nonprofit corporation, even though a council member is the president of the chamber and his spouse is an employee of the chamber, provided that the council member discloses his financial interest in the donation to the city council, the interest is noted in the city council's official records, and the council member does not participate in the making of the donation.[7]
[1] All references hereafter to the Government Code are by section number only.
[2] Section 1097 imposes sanctions for violations of section 1090 and other conflict-of-interest statutory provisions:
 "Every officer or person prohibited by the laws of this state from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing script, or other evidences of indebtedness, including any member of the governing board of a school district, who willfully violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the state prison, and is forever disqualified from holding any office in this state."
[3] Gifts are distinguished from contracts by a lack of consideration. Civil Code section 1146 thus provides: "A gift is a transfer of personal property, made voluntarily, and without consideration." (See also Civ. Code, § 1605
[defining consideration as "any benefit conferred" to which promisor not lawfully entitled].) Here, for purposes of our analysis, we may assume that the city's proposed donation would advance a legitimate and authorized public purpose.
[4] Additionally, more specialized exceptions to section 1090 are set forth in sections 1091.1-1091.4.
[5] The phrase "making of a contract," as used in section 1090, has been broadly defined to include all of the various activities leading up to execution of the contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (See Stigall v. Cityof Taft, supra, 58 Cal.2d at pp. 569-571; City Council v. McKinley
(1978) 80 Cal.App.3d 204, 212-213; People v. Sobel (1974)40 Cal.App.3d 1046, 1052; Millbrae Assn. for Residential Survival v. City ofMillbrae (1968) 262 Cal.App.2d 222, 237; Schaefer v. Berinstein (1956)140 Cal.App.2d 278, 291-292; 86 Ops.Cal.Atty.Gen., supra, at p. 145, fn. 3; 85 Ops.Cal.Atty.Gen., supra, at p. 35; 80 Ops.Cal.Atty.Gen. 41, 42-44
(1997).)
[6] Section 1091.5, subdivision (a)(8), specifies as a noninterest: "That of a noncompensated officer of a nonprofit, tax-exempt corporation, which, as one of its primary purposes, supports the functions of the body or board. . . ." (See 88 Ops.Cal.Atty.Gen.,supra, at p. 38.) Because of the "noncompensated" requirement, this noninterest exception would be inapplicable in the circumstances presented.
The reference in section 1091, subdivision (b)(1), to a nonprofit "entity exempt from taxation pursuant to Section 501 (c)(3) of the Internal Revenue Code (26 U.S.C. Sec. 501 (c)(3)" was added to the statute in 2004 (Stats. 2004, ch. 16, § 1) as an urgency measure to cover contracts between the Palo Alto City Council and Stanford University, which is a nonprofit trust rather than a nonprofit corporation. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1086 (2003-2004 Reg. Sess.) as amended Jan. 16, 2004.) Here, because the chamber is a nonprofit corporation, the 2004 amendment expanding the scope of the remote interest to include certain "nonprofit entities" is not germane to our inquiry.
[7] The Political Reform Act of 1974 (§§ 81000-91014) generally prohibits public officials from participating in "governmental decisions" in which they have a financial interest. (See § 87100;88 Ops.Cal.Atty.Gen. 32, 33-34 (2005); 78 Ops.Cal.Atty.Gen. 362, 368-374
(1995); 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46
(1987).) Since we conclude here that the council member may not directly or indirectly participate in the making of the donation, including lobbying other council members or talking about the donation to city staff members, due to the requirements of section 1091, subdivision (b)(1), we need not further analyze the provisions of this additional statutory scheme.