Filed 9/14/16  Pfuhl v. Mercury Casualty Co. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CARIN PFUHL et al., | |
| Plaintiffs and Appellants, | E063064 |
| v. | (Super.Ct.No. RIC1301375) |
| MERCURY CASUALTY COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.

Affirmed.

J R Tyler Law and J. Russell Tyler, Jr., for Plaintiffs and Appellants.

Hager & Dowling, John V. Hager and Christine W. Chambers, for Defendant and

Respondent.

Plaintiffs and appellants Carin Pfuhl and Charles Pfuhl II own a house in

Riverside insured by defendant and respondent Mercury Casualty Company (Mercury);

their adult children, plaintiffs and appellants Charles Pfuhl III, Clair Pfuhl, and Cathrin

Pfuhl, reside with them in the house.  Plaintiffs claimed the house was damaged by a

1

flood caused by a "failure in the plumbing system" that occurred on November 18, 2009. Mercury has paid plaintiffs a total of $81,004.10 on the claim. Plaintiffs contend, among other things, that this sum was neither timely paid nor sufficient.

The operative first amended complaint asserts five causes of action against Mercury, for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, intentional infliction of emotional distress, and negligence. The trial court granted summary judgment in favor of Mercury on statute of limitations grounds, and awarded Mercury costs in the amount of $54,549.

In this appeal, plaintiffs argue that their suit was timely filed. They also challenge in part the trial court's award of costs, focusing in particular on the discretionary award of $34,232 in expert witness fees. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are homeowners, whose property was insured by Mercury under a homeowner's insurance policy. The policy contains the following one-year limitations provision: "**Suit Against Us.**  No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage."  (Original boldface.)

It is undisputed, at least for purposes of this appeal, that plaintiffs sought coverage under the policy for damage that occurred on November 18, 2009.[1] According to plaintiffs, on that date the first floor of their house was flooded with sewage, which backed up out of several toilets and a bath tub.

The parties dispute, however, *when* plaintiffs sought coverage for that damage. Mercury contends that plaintiffs first reported the flood to it on July 26, 2010, and that it opened a claim immediately. Plaintiffs contend that they (specifically, Carin Pfuhl) first reported the flood on the day that it occurred, November 18, 2009, to the broker who had procured the homeowner's insurance policy for them, defendant Cheryl Joseph, a principal of defendant Raphael John Joseph Insurance Services, Inc. (the Joseph Agency).[2] Additionally, plaintiffs assert that Carin Pfuhl contacted Mercury directly by means of a letter, dated December 10, 2009. That letter makes reference to a telephone conversation between Carin Pfuhl and a Mercury representative "last week," and Carin Pfuhl states in her declaration submitted in opposition to Mercury's motion that she personally telephoned Mercury in "late November 2009."

In a letter dated July 27, 2010, Mercury informed plaintiffs of certain terms of their policy, including the one-year limitation period quoted above. The letter further

---

[1] The date of loss listed in many of Mercury's documents regarding the claim is November 22, 2009, a date apparently reported by plaintiffs in July 2010 based on a receipt from a plumber that had that date. Plaintiffs later contended that report to be in error, and that the actual date of loss was November 18, 2009, the date alleged in the complaint.

[2] Cheryl Joseph and Raphael John Joseph Insurance Services were named as defendants in the present lawsuit, but are not party to this appeal.

3

explained that the limitations period "begins the date the claim is closed," except that "if there is a lapse of time between the date the loss occurred and the date you reported it to Mercury, those days will be subtracted from your one-year period."

After an investigation, in April 2011, Mercury paid plaintiffs a total of $43,086.10 on their claim, and by means of a letter on April 14, 2011, informed plaintiffs that the claim was closed as of that date. The letter again recited the policy language regarding the one-year limitation on actions against Mercury, and used the same language as the July 27, 2010, letter to describe how the duration of the limitations period is calculated.

In June 2011, in response to an email from plaintiffs contesting the adequacy of the amount paid on the claim, Mercury paid plaintiffs an additional $9,280, while emphasizing that the claim remained closed.

In February 2012, plaintiffs, through a letter to Mercury by their counsel, expressed their view that Mercury had acted inappropriately in a number of ways, and demanded among other things, $7.5 million as a "starting figure." In a letter dated February 28, 2012, Mercury agreed "to re-open this claim and to re-evaluate our position in an effort to determine whether any additional amounts are due under the policy." It did so "under a reservation of rights" based on the reasons expressed in its correspondence with plaintiffs, and reserving the right "to assert any other policy provisions or defenses that might become apparent at any later time."

On December 24, 2012, Mercury sent plaintiffs' current counsel (plaintiffs had changed counsel in September 2012) a letter describing the findings of its further review and investigation, and reclosing the claim. Mercury agreed to pay plaintiffs an additional

4

$28,638, bringing its total payments to plaintiffs to $81,004.10. This letter again quoted the policy language providing for a one-year limitations period on any action against Mercury, but did not include any additional explanation of how the limitation period was calculated.

Plaintiffs filed suit on February 4, 2013, and amended their complaint on May 10, 2013. Mercury's motion for summary judgment was filed August 1, 2014. After several hearings, and various supplemental submissions by both parties, on October 21, 2014, the trial court granted summary judgment in favor of Mercury, finding that "the statute of limitations has run." Judgment was entered on November 13, 2014.

Mercury had previously made offers of compromise pursuant to Code of Civil Procedure section 998,[3] which plaintiffs did not accept.[4] On December 4, 2014, Mercury filed a memorandum of costs, seeking $57,593. After hearing a motion to tax costs by plaintiffs, the trial court awarded Mercury $54,549 in costs, including $34,232 in expert fees.[5]

---

[3] Further undesignated statutory references are to the Code of Civil Procedure.

[4] Mercury offered to pay Carin Pfuhl $100,000, and $1,500 each to Charles Pfuhl III, Cathrin Pfuhl, and Clair Pfuhl. No offer to compromise specifically addressed to Charles Pfuhl II appears in our record, but no party has argued that this circumstance is material to any issue in this appeal.

[5] Additional facts will be discussed below as necessary to address plaintiffs' claims of error.

## II.  DISCUSSION

## A.  Summary Judgment Was Properly Granted on Statute of Limitations Grounds.

Plaintiffs contend that the trial court erred in determining their lawsuit to be barred by the applicable one-year limitations period, arguing that the limitations period was tolled (1) from November 18, 2009, when they reported the loss to their broker, to April 14, 2011, when Mercury formally closed the claim, and (2) from February 28, 2012, when Mercury reopened the claim, to December 24, 2012, when Mercury again closed the claim.  Plaintiffs further argue that Mercury is estopped from asserting the limitations period because it did not adequately explain the deadline for bringing suit in its December 24, 2012, letter, and it failed to deliver a copy of the policy to plaintiffs.  We find that summary judgment was properly granted because plaintiffs filed suit after the limitations period had expired, and Mercury should not be equitably estopped from asserting the limitations period as a defense.

### 1.  *Standard of Review.*

Under section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  A defendant meets its burden on summary judgment by showing that the plaintiff cannot prove its causes of action, or by establishing a complete defense to the plaintiff's causes of action.  (§ 437c, subd. (p)(2).)  The burden then shifts to the plaintiff to show a triable issue of fact material to the causes of action or defense.  (*Ibid.*)

6

We evaluate a summary judgment ruling de novo, independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefno v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

*2. The Limitations Period Was Not Tolled By Plaintiffs' Report of the Loss to Their Broker on November 18, 2009.*

The parties agree that the limitations period applicable to plaintiffs' claims was equitably tolled from July 26, 2010, to April 14, 2011, while Mercury investigated the claim. (See *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 678 (*Prudential-LMI*) [limitations period "equitably tolled from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing"].) Plaintiffs contend, however, that they first gave Mercury notice of the loss not on July 26, 2010, but on November 18, 2009, when they reported the claim to the broker, Cheryl Joseph, who had procured the homeowner's insurance policy for them. On the undisputed facts in the record, however, notice of the loss to the broker did not constitute notice to Mercury.

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of

7

limitations as necessary to ensure fundamental practicality and fairness. [Citations.] [The California Supreme Court] has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice. . . . [¶] [T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370.)

An insurance broker is defined as one who, "for compensation and on behalf of another person, transacts insurance other than life, disability, or health with, but not on behalf of, an insurer. (Ins. Code, § 33.) The insurance broker is ordinarily the agent of the insured and not of the insurer. (*Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 213, superseded by statute on other grounds as stated in *People v. Honig* (1996) 48 Cal.App.4th 289, 318.) More specifically, in securing a policy for its client a broker "acts only as agent for the [in]sured . . . ." (*Maloney v. Rhode Island Ins. Co.* (1953) 115 Cal.App.2d 238, 244.) However, the facts of a case may show the broker was acting in a "dual capacity," as agent for both insured and insurer, in specific respects. (*Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 584.)

The undisputed facts demonstrate that Cheryl Joseph and the Joseph Agency were not acting as agents for Mercury with respect to taking reports of losses, at least on November 18, 2009. Indeed, Carin Pfuhl's own declaration, submitted in opposition to Mercury's motion for summary judgment, forecloses any argument regarding even

8

ostensible agency, stating that Ms. Joseph "refuse[d] to send our claim to Mercury," and "never told us that she was making any decision on behalf of Mercury, or communicating any decision to us on behalf of Mercury." For her part, Ms. Joseph declared that she did not remember speaking to Carin Pfuhl with respect to her loss, but that her general practice was to provide Mercury's phone number and the policy number to the insured, and to instruct the insured to call Mercury directly to make a claim.**6**

Furthermore, despite plaintiffs' assertions to the contrary, there is no evidence in the record that Ms. Joseph or the Joseph Agency were in fact designated to act as agents of Mercury for purposes of receiving loss reports. The name and address of the Joseph Agency appears in plaintiffs' policy—indeed its name and address are the only ones that appears there—but it is identified as the "producer" of the policy, not as a Mercury representative to whom losses should be reported. (See *Carlton v. St. Paul Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1457 (*Carlton*) [broker identified as "'producing agent'" and the "'Agency'" for the policy on application form was not an agent for insurer].)

Plaintiffs also submitted evidence of a Mercury website, which they characterize as stating that the Joseph agency is a "Mercury Agent" and containing "testimonials that Mercury Agents help its insureds make claims." Plaintiffs ignore that the "testimonial" appears under a heading "Mercury Television Commercials," and is a description of an

---

**6** Plaintiffs have disputed this characterization of the general practice between Mercury and the Joseph Agency, but it is not a dispute that raises a triable issue of material fact under the circumstances of this case.

advertisement for the services *Mercury* provides to its policy holders, not services provided by the Joseph Agency. Although a header on the website uses the phrase "Authorized Agent," the text of the site identifies the Joseph Agency more specifically as an "authorized, independent Mercury Insurance Agency," and the services that the Joseph Agency is described as providing in that role all relate to procuring insurance; making sure that the insured gets "every discount possible," working "to create a protection plan tailored to your needs," and the like. Nothing on the website raises a triable issue of material fact regarding whether Ms. Joseph or the Joseph Agency should be treated as agents of Mercury, rather than an agent of the insured for purposes of procuring insurance.

Plaintiffs cite also to a letter from Mercury that specifically directed them to report any new losses to the Joseph Agency. In their briefing, however, plaintiffs fail to address the circumstance that the letter is dated August 22, 2011—after their claim was initially closed. The letter establishes that the Joseph Agency was designated to serve as Mercury's agent for receiving notice of any new losses after that date. But plaintiffs are able to point to nothing establishing the Joseph Agency to be Mercury's agent for the purpose of receiving reports of new losses as of November 2009.

In short, on the undisputed facts in the record, Ms. Joseph and the Joseph Agency were not Mercury's agent, so notice to Ms. Joseph or the Joseph Agency did not constitute notice to Mercury of plaintiffs' loss. (*Carlton, supra*, 30 Cal.App.4th at p. 1457.) Plaintiffs' arguments in briefing and in oral argument, that Carin Pfuhl reasonably, even if mistakenly, understood that her claim was properly and successfully

made by reporting the loss to the Joseph Agency, are foreclosed by her own declaration testifying that Ms. Joseph explicitly refused to send her claim to Mercury. The statute of limitations therefore was not tolled, but on the contrary began to run on November 18, 2009.

*3. Plaintiffs Produced Some Evidence Supporting Tolling of Limitations Period from November 30, 2009, to April 14, 2011.*

The parties are in agreement that the limitations period was equitably tolled from the date Mercury was notified of plaintiffs' loss until April 14, 2011, when Mercury wrote to plaintiffs closing their claim. The date that begins this period, however, is disputed.

Mercury asserts that its first knowledge of plaintiffs' loss came from a phone call by plaintiffs on July 26, 2010. As noted, however, plaintiffs produced some evidence that they reported the flood directly to Mercury substantially sooner. According to plaintiffs, Carin Pfuhl contacted Mercury directly by means of a letter, dated December 10, 2009. And that letter makes reference to a telephone conversation between Carin Pfuhl and a Mercury representative "last week." The Monday of the week before Thursday, December 10, 2009, was November 30, 2009, and Carin Pfuhl states in her declaration submitted in opposition to Mercury's motion that she personally telephoned Mercury in "late November 2009." Plaintiffs therefore presented at least some evidence, albeit not indisputable evidence, that they reported their loss to Mercury on November 30, 2009.

11

In light of plaintiffs' evidence, the *undisputed* facts regarding when plaintiffs gave Mercury notice of their loss establish only that the limitations period ran from November 18, 2009, to November 30, 2009, a period of 12 days.

*4. The Limitations Period Was Tolled When Mercury Reopened the Claim.*

The parties agree that the clock was running on the limitations period from April 14, 2011, when Mercury wrote to plaintiffs closing their claim, to February 28, 2012, when Mercury agreed to reopen the claim—by our calculations a period of 320 days.[7] The parties do not agree with respect to whether the limitations period was tolled from February 28, 2012, until Mercury again closed the claim on December 24, 2012. Mercury contends that the limitations period was not tolled during that period. Plaintiffs disagree, as do we.

Mercury is incorrect that "[t]here is no reason to apply a second period of equitable tolling." The same policy reasons that led the Supreme Court to endorse equitable tolling of limitations periods in insurance contracts apply equally well to periods when a claim has been reopened as they do to initial processing of claims. "First, it allows the claims process to function effectively, instead of requiring the insured to file suit *before* the claim has been investigated and determined by the insurer. Next, it protects the reasonable expectations of the insured by requiring the insurer to investigate the claim without later invoking a technical rule that often results in an unfair forfeiture

---

[7] Plaintiffs have calculated this period to be 319 days, while Mercury counts 323. The differences between the three calculations are not, however, material to the disposition of this appeal, so we do not attempt to reconcile them.

of policy benefits. . . . Third, a doctrine of equitable tolling will further our policy of encouraging settlement between insurers and insureds . . . ." (*Prudential-LMI*, *supra*, 51 Cal.3d at p. 692.) Mercury was under no obligation to formally reopen plaintiffs' claim, but by expressly doing so, it acknowledged to plaintiffs that further investigation of the claim would be conducted, and its prior determination of the claim would be reconsidered. For the reasons articulated in *Prudential-LMI*, equity dictates that plaintiffs should not be required to file suit before that continuing claims process had been completed, regardless of whether Mercury had previously closed the claim.

*Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, is instructive. In that case, the insurer expressly agreed to "reopen" the claim, when the insured requested reconsideration. (*Id.* at p. 754.) The claim had been settled years before, but legislative action had created a one-year extension of the filing period for certain claims; at issue was whether that one-year period was tolled when the insurer agreed to reopen the claim. (*Id.* at p. 755.) The Court of Appeal concluded that tolling did apply, but only for the period after the claim is explicitly reopened, not while the insurer is considering a request to reopen a claim: "As one of the purposes of equitable tolling is to allow the insurers time to conduct full investigations into claims made, equitable tolling should only apply—in the context of a previously denied claim—when the insurer has agreed to reopen and reinvestigate the claim." (*Id.* at p. 762.)

Mercury relies on *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135 (*Singh*) to support its argument that the equitable tolling should not be applied for the period when plaintiffs' claim was reopened. That reliance is misplaced. In *Singh*, after an

13

unequivocal denial of a claim, the insured requested that the insurer reopen it. (*Id.* at p. 142.) The insurer responded by denying the request. (*Ibid.*) The *Singh* court concluded that the limitations period was not equitably tolled during the 30-day period when the insurer was considering the request to reopen the claim, stating that the "justifications for equitable tolling are absent, once the carrier has initially denied the claim." (*Id.* at p. 142.)

The court of appeal in *Singh* did not face a circumstance where the insurer explicitly agreed to reopen the claim, as the *Ashou* court did, and as we do in this case. *Singh* teaches that equitable tolling does not apply to the period between plaintiffs' request that Mercury reopen the claim and Mercury's February 28, 2012, letter agreeing to do so. Similarly, equitable tolling does not apply to the period in June 2011, when plaintiffs' claim had been closed, but Mercury nevertheless considered plaintiffs' objection to the adequacy of Mercury's payments on the claim, eventually agreeing to pay an additional amount, while emphasizing that the claim remained closed. Mercury's broader interpretation of the *Singh* case is unpersuasive.

In sum, the undisputed facts demonstrate that the deadline for plaintiffs to file their lawsuit had not run on December 24, 2012, when Mercury informed plaintiffs that it was again closing their claim; the limitations period had run for 12 days, between November 18, 2009, and November 30, 2009, and for 320 days between April 14, 2011, and February 28, 2012. Mercury's arguments based on the proposition that the limitations period had already elapsed on December 24, 2012, are rejected on that basis.

14

Nevertheless, as noted, plaintiffs did not file suit until February 4, 2013, a period of another 42 days. Subtracting out days when the limitations period was equitably tolled, based on the undisputed facts, plaintiffs did not file suit until 374 days after their loss, and therefore after the one-year limitations period in their policy had already run. We turn, then, to plaintiffs' arguments as to why Mercury should be equitably estopped from asserting the limitations period as a defense.

*5. Mercury Is Not Estopped from Asserting the Limitations Period for Failure to Adequately Notify Plaintiffs of the Deadline for Bringing Suit.*

Plaintiffs contend that Mercury should be equitably estopped from asserting the limitations period because it did not clearly state the deadline for bringing suit in its December 24, 2012, letter. We disagree.

"A defendant may be equitably estopped from asserting a statutory or contractual limitations period as a defense if the defendant's act or omission caused the plaintiff to refrain from filing a timely suit and the plaintiff's reliance on the defendant's conduct was reasonable. [Citations.] The act or omission must constitute a misrepresentation or nondisclosure of a material *fact*, rather than law. [Citation.] The defendant need not intend to deceive the plaintiff to give rise to an equitable estoppel." (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 186 (*Superior Dispatch*).)

Ordinarily, to establish an equitable estoppel, "(1) [t]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the

15

other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 890 (*Skulnick*).)

The undisputed facts demonstrate that Mercury explicitly informed plaintiffs of the one-year limitations period in their policy on at least three occasions, in letters dated July 27, 2010, April 14, 2011, and December 24, 2012. This case is therefore unlike *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 (*Spray*), a case on which plaintiffs rely. In *Spray*, the court of appeal found a triable issue of material fact as to whether the insurer should be estopped from asserting a one-year contractual limitations period; the insured presented evidence that the insurer never advised it of the limitations period, and that it was in fact unaware of the policy's limitation period. (*Id.* at pp. 1264-1265, 1269.)

Plaintiffs point out that Mercury's "December 24, 2012, letter does not clearly state that the statute of limitations had only a few days left to run." Plaintiffs cite no authority, however, that stands for the proposition that Mercury was required to calculate for plaintiffs precisely when the limitations period expired. *Spray* teaches only that insurers have a duty to inform the insured of a contractual limitations provision, and that the failure to perform that duty could give rise to an equitable estoppel. (*Spray, supra*, 71 Cal.App.4th at pp. 1264-1265, 1269.) In other words, the insurer must explicitly disclose the material fact of the existence of the contractual limitations period; there is no requirement that it advise the insured on the legal question of when, precisely that

16

limitation period expires.[8] (*Superior Dispatch, supra*, 181 Cal.App.4th at p. 186 [to support application of equitable estoppel, the "act or omission must constitute a misrepresentation or nondisclosure of a material *fact*, rather than law"].)

Furthermore, this is not a situation where Mercury lulled plaintiffs into sleeping on their rights. Nothing Mercury told plaintiffs is reasonably understood to suggest that their time for bringing suit was restarted when Mercury agreed to reopen their claim, and began to run only when the claim was reclosed. The claim was reopened under an express reservation of rights. And if anything, by omitting any discussion of tolling, Mercury's December 24, 2012, letter suggests the limitations period expired sooner than it actually did, not later.[9]

We conclude that Mercury gave plaintiffs adequate notice of their policy's contractual limitations period for bringing suit, precluding plaintiffs from asserting any equitable estoppel on that basis.

*6. Mercury Is Not Estopped from Asserting the Limitations Period for Failure to Deliver Plaintiffs a Copy of the Policy.*

Plaintiffs assert that they were never given a copy of their policy, only a summary "Declarations Page" that does not mention the one-year limitations period, so Mercury may not enforce that limitations period. We disagree.

---

[8] It is perhaps worth noting again here that Mercury's December 24, 2012, letter was sent to plaintiffs' *counsel*.

[9] Importantly, plaintiffs did not submit any evidence that their delay in bringing suit was motivated by a belief that the limitations period had already expired, so that bringing suit would be futile.

As discussed above, even if plaintiffs were never delivered a copy of their policy, they had actual notice of the limitations period contained therein. Mercury informed them of the provision on no fewer than three separate occasions, and well in advance of its expiration. Plaintiffs' actual notice of the policy provision precludes any application of equitable estoppel to prevent Mercury's enforcement of the provision. (*Skulnick, supra*, 2 Cal.App.4th at p. 890.)

Plaintiffs cite *Espree v. Western Pioneer Ins. Co.* (1958) 159 Cal.App.2d Supp. 875 (*Espree*) for the proposition that Mercury may not "attempt to enforce the language it never delivered." In *Espree*, the court of appeal refused to enforce a policy exclusion that could have provided a basis for denying coverage, because the insured had never been given a copy of the portion of the policy containing the exclusion, and the insured was unaware of the exclusion. (*Id.* at pp. 877-879.)

The present case is distinguishable from *Espree*. In *Espree*, the insured was essentially denied the opportunity to seek other coverage for an excluded risk, because the exclusion was not timely disclosed to it. Equity therefore dictated that the insurer be estopped from invoking the exclusion as a basis for denying coverage. Here, in contrast, plaintiffs received actual notice of the contractual limitations period for bringing suit long before it expired, when Mercury first began to process the claim. The equitable considerations here, therefore, weigh differently, and require a different conclusion

regarding the enforceability of the policy provision at issue.[10]  Where policy provision at issue was, one way or another, plainly and clearly brought to the attention of the insured in a timely manner, as it was in this case, it is enforceable, regardless of whether a complete copy of the policy was delivered to the insured.  (See *Russell v. Bankers Life Co.* (1975) 46 Cal.App.3d 405, 413-414 [insurer may not rely on limitations or exclusions not reasonably expected by insured "unless those limitations were plainly and clearly brought to the attention of the insured"].)

7. *The One-year Contractual Limitations Period Applies to Each of Plaintiffs' Causes of Action.*

Plaintiffs assert that their claim for breach of the covenant of good faith and fair dealing is not governed by the one-year limitations period provided by their policy, but rather the longer statutory limitations period that applies generally to bad faith claims. This is a matter that has previously generated some controversy among the California courts of appeal.  (See *Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291, 1296-1302 [discussing split of authority on the issue].)  Neither party, however, attempts any discussion of that controversy in their briefing.

---

**10** Moreover, *Espree*, a decision of the appellate division of the superior court, is not binding precedent for this court.  (See *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1529 ["It is true that we typically follow the decisions of other appellate districts or divisions, but only if we lack good reason to disagree."].)  To the extent *Espree* must be read as plaintiffs read it, to state a bright line rule that the insurer may not enforce a policy exclusion or limitation if the full policy was not delivered to the insured, regardless of actual notice of the provision at issue, we decline to follow it.

In any case, the approach that is currently most widely accepted, and the one that we find most appropriate, is that actions for breach of the implied covenant are considered actions on the policy, governed by the contractual limitations period, so long as the essential aim of the action is the recovery of benefits that were owed under the policy. (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 736, fn. 12.) The essential aim of plaintiffs' action is to recover benefits that they contend were owed under the policy, and which Mercury refused to pay. The one-year contractual limitations period in their policy therefore applies to each of their causes of action, including their cause of action for breach of the covenant of good faith and fair dealing.

In sum, the undisputed facts demonstrate that plaintiffs' lawsuit was filed after the applicable one-year limitations period had expired, despite the equitable tolling of substantial periods of time, and Mercury is not equitably estopped from asserting the limitations period as a defense. Summary judgment in favor of Mercury was therefore properly entered. We turn, then, to plaintiffs' claims of error regarding the trial court's award of costs to Mercury.

## B. The Trial Court's Award of Costs Was Not an Abuse of Discretion.

Plaintiffs argue that the trial court's discretionary award of expert fees to Mercury was an abuse of discretion in several respects, requiring reversal of that portion of the trial court's award of fees and costs. We find no abuse of discretion.

Section 998 allows for any party in a civil suit to serve a settlement offer to any other party before the commencement of trial. (§ 998, subd. (b).) It further provides that

20

"[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . actually incurred and reasonably necessary in . . . preparation for trial or arbitration . . . of the case by the defendant." (§ 998, subd. (c)(1).)

"In reviewing a trial court's award of costs pursuant to section 998, the appropriate standard of review is abuse of discretion. [Citation.] The party appealing the trial court's decision to award costs bears the burden '"to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' [Citation.] To meet its burden, a complaining party must therefore show that the trial court exercised its discretion in an 'arbitrary, capricious or patently absurd manner.' [Citation.]" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1482.)

We find nothing arbitrary, capricious, or patently absurd in the court's exercise of discretion. Nothing in the record supports the conclusion that Mercury's section 998 offers were not made in good faith or otherwise invalid. Nothing in the record supports the conclusion that the expert witness costs claimed by Mercury were not actually incurred, or not reasonably necessary preparations for trial (which had been set for

21

October 31, 2014, very shortly after Mercury's motion for summary judgment was heard).

The arguments presented by plaintiffs in support of a contrary conclusion are unpersuasive.  Plaintiffs cite to *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550 for the proposition that "the trial court must consider the relative financial position of the parties in determining how much to award in costs."  The record here establishes that the trial court did consider plaintiffs' financial situations when setting the award of expert witness fees.  Plaintiffs would have preferred that the trial court give that issue greater weight than it did, but can point to nothing in the record that would compel the trial court to exercise its discretion differently.

Plaintiffs also assert that Mercury's expert fees were not reasonably necessary because their work duplicated inspections already conducted during the claims process. It is not apparent why a home inspection conducted during the claims process, or expert reports generated from such an inspection, would necessarily be adequate for litigation purposes.  Plaintiffs identify nothing specific in the record compelling the conclusion that Mercury's experts were simply "reinvent[ing] the wheel" and "double charg[ing] their fees to this case," as they assert.

Plaintiffs note that summary judgment was granted in Mercury's favor on statute of limitations grounds, which had "nothing to do with any work performed" by Mercury's litigation experts.  This argument ignores that Mercury's summary judgment motion was heard only shortly before trial; Mercury reasonably needed to be fully

prepared to try the case, on any and all possible grounds. The litigation expert costs were reasonably incurred under the circumstances, even if they turned out not to be necessary.

Plaintiffs object in particular to the award of expert witness fees as imposed against Clair Pfuhl, Cathrin Pfuhl, and Charles Pfuhl III, contending that they are young adults "just starting out in life" who "should not be saddled with a large judgment against them." Plaintiffs emphasize that the damages sought by the Pfuhl children were modest, compared to those sought by their parents. Nevertheless, the Pfuhl children are adults, who chose to press their claims, despite a request by Mercury that they dismiss their claims against Mercury, in light of an adverse ruling with respect to their claims asserted against other defendants, and despite section 998 offers of settlement to each of them. Mercury's trial preparations, including the fees expended on litigation experts, necessarily had to address the claims asserted by all plaintiffs. Plaintiffs have demonstrated no abuse of discretion in the trial court's decision to make plaintiffs each jointly and severally liable to Mercury for the entire amount of fees and costs.

### III.  DISPOSITION

The judgment is affirmed. Mercury is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

MCKINSTER
J.

CODRINGTON
J.

23